## COMMONWEALTH *vs.* PAUL TANSO.

Suffolk. November 5, 1991. - January 14, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Constitutional Law*, Confrontation of witnesses, Assistance of counsel. *Witness*, Unavailability, Cross-examination. *Evidence*, Previous testimony of unavailable witness, Polygraphic test. *Identification. Practice, Criminal*, Grand jury proceedings.

A judge of the Boston Municipal Court had jurisdiction, after a criminal defendant waived a probable cause hearing but before any indictments were returned, to allow the Commonwealth's motion for leave to take prospective witnesses' depositions pursuant to Mass. R. Crim. P. 35. [645]

A judge of the Boston Municipal Court acted within his discretion in allowing the Commonwealth's motion pursuant to Mass. R. Crim. P. 35 for leave to take the depositions of two prospective witnesses at a criminal trial where, on the evidence presented by the Commonwealth, the judge could conclude that the Commonwealth was legitimately concerned that the witnesses might be unable or unwilling to testify at trial and that this concern would be alleviated by his allowing the motion. [645-646]

Discussion of the requirements of the confrontation clause of the Sixth Amendment to the United States Constitution with reference to the admissibility of an absent witness's prior recorded testimony in evidence at a criminal trial. [646-649]

Where a criminal defendant was not afforded a constitutionally adequate opportunity to cross-examine a prospective witness at a deposition taken pursuant to Mass. R. Crim. P. 35, the admission of the witness's deposition testimony at the defendant's murder trial when the witness was unavailable violated the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. [649-651]

A criminal defendant was not entitled to receive a court-ordered polygraph examination and to have the results admitted in evidence at his trial. [651]

On a motion to suppress a witness's identification testimony, the judge was warranted in concluding that the defendant had failed to establish, by a preponderance of the evidence, that the identification procedures used

in three separate police lineups were unnecessarily suggestive, and the judge properly rejected the contention that the witness's experience while an assistant district attorney affected his identification of the defendant in a lineup. [652-653]

On the record of a criminal case, the issue of the defendant's right to have counsel present during a postlineup interview with police, at which a witness made his identification, was not presented for this court's review. [653-654]

Where the judge at the hearing on a pretrial motion to suppress concluded that the circumstances of a witness's out-of-court identification of the defendant were not unnecessarily suggestive, he correctly precluded cross-examination at the hearing intended to call in question the reliability of the witness's observations at the scene of two murders. [654-655]

A criminal defendant was not entitled to dismissal of the indictments against him by reason of the Commonwealth's failure to present certain allegedly exculpatory evidence to the grand jury. [655-656]

INDICTMENTS found and returned in the Superior Court Department on May 21, 1986.

Pretrial motions were heard by *Charles R. Alberti*, J., and *Robert W. Banks*, J., and the cases were tried before *Sandra L. Hamlin*, J.

*F. Lee Bailey* (*Kenneth J. Fishman & Peter Charles Horstmann* with him) for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Paul Tanso, appeals from two convictions of murder in the first degree.[1] The main issue on appeal is the trial judge's admission in evidence, over objection, of the deposition testimony of an unavailable witness who had not been cross-examined. For the reasons stated in this opinion, we conclude that the defendant did not waive his right to cross-examine the witness. Therefore, the admission of the deposition testimony violated the defendant's right to confrontation under the Sixth Amendment to the United

---

[1]Tanso was also convicted of unlawful possession of a handgun.

States Constitution.[2] Accordingly, the defendant is entitled to a new trial.[3] We also comment briefly on some of the issues likely to recur at retrial.

On February 19, 1986, at approximately 9:30 P.M., a double homicide occurred in a park in Boston's North End. The defendant was arrested on February 23, 1986, and arraigned the next day on complaints charging him and two codefendants with the February 19 murders. At trial, the Commonwealth's proof indicated that the defendant, along with codefendants Frank DiBenedetto and Louis Costa, killed John Bottari and Frank Angelo Chiuchiolo by firing weapons repeatedly into their bodies at close range. Two witnesses identified the defendant as one of the assailants. One, Joseph Schindler, testified that he observed part of the incident from his apartment window.

The other witness, Richard Storella, knew the defendants as well as the men who were killed. In a deposition before the Boston Municipal Court judge, Storella said that the victims had planned to rob DiBenedetto. Storella said that he drove with the two victims to the park and observed the killings while standing outside of the park.

At a pretrial hearing on Monday, March 3, 1986, in the Municipal Court,[4] the defendant waived his rights to a probable cause hearing, and the Commonwealth moved to depose Schindler and Storella pursuant to Mass. R. Crim. P. 35, 378 Mass. 906 (1979).[5] In support of its motion, the Com-

---

[2]Because our conclusion is based on the Sixth Amendment to the Constitution of the United States, we do not discuss art. 12 of the Massachusetts Declaration of Rights.

[3]The defendant's motions for new trial based on Storella's reappearance and availability were denied. The defendant's sentences were stayed pending appeal of the denial of his motions for new trial and his convictions.

[4]Counsel for the defendant and a codefendant were both present at all the pretrial hearings discussed in this section; the third defendant was tried separately as a juvenile.

[5]Rule 35 of the Massachusetts Rules of Criminal Procedure states, in relevant part, "Whenever due to exceptional circumstances, and after a showing of materiality and relevance, it is deemed to be in the interest of justice that the testimony of a prospective witness of the defendant or the Commonwealth be taken and preserved, the judge may at any time after

monwealth presented evidence that weapons and ammunition had been seized from the homes of both the defendant and his codefendant, and that Schindler and Storella feared for their safety. The judge allowed the motion. At that point, Schindler was sworn and gave direct testimony before the judge, including an in-court identification of the defendant. At the close of Schindler's testimony, defense counsel stated that he was not prepared for cross-examination. The judge continued the proceedings until the next day, and said that he would order defense counsel "either to take cross-examination at that time or to waive it."

The next day Storella gave direct testimony in a deposition before the Municipal Court judge. Defense counsel said that he still was not prepared to cross-examine. Defense counsel stated that he believed that any cross-examination that he might conduct at that time would constitute ineffective assistance of counsel in violation of his client's Sixth Amendment rights. The Commonwealth countered that the defendant did, in fact, have the opportunity to conduct an effective cross-examination on that day, and that, if the defendant refused to do so, "it is only for the purpose of tactics . . . so that [the defendants] will be in a position, should the witness be executed, to say, 'We did not have effective cross examination; you cannot use that testimony.' "

The defendant moved to hold Schindler and Storella, the Commonwealth's rule 35 witnesses, in protective custody as material witnesses until such time as the defense had an opportunity to cross-examine them. The defendant also asked for full discovery.[6] The judge denied both defense requests, and continued the proceedings until that Friday, March 7.

On Friday, defense counsel once again indicated to the judge that he was not prepared to cross-examine, and asked

the filing of a complaint or return of an indictment, upon his own motion or the motion of either party with notice to all interested persons, order that the testimony of the witness be taken by deposition . . . ."

[6] At that time, defense counsel had received as discovery a redacted search warrant, an incident report from the police, and a statement alleged to be a transcript of a tape recorded interview of Schindler.

for a continuance. The Commonwealth opposed the continuance, representing that it had provided all discovery in its possession to defense counsel at 5 P.M. on the previous Tuesday, March 4. The Commonwealth asked the judge to rule that, in declining to cross-examine on that day, the defendant had waived his right to cross-examine Storella. Defense counsel expressly stated that they did not waive cross-examination of Storella. Although earlier the judge had indicated that he would order the defendant to cross-examine the witnesses or waive the right to cross-examination if he did not avail himself of the opportunity, the judge instead declined to rule on both the defendant's and the Commonwealth's requests. Saying that he would "leave [the defendants] to whatever remedies may exist," he bound the case over to the grand jury.

The indictments were returned on May 21, 1986. The defendant filed a motion on October 17, 1986, in the Superior Court requesting permission to complete the rule 35 depositions through cross-examination. At that hearing, the Commonwealth argued that the defendant had waived his cross-examination rights by failing to avail himself of his earlier opportunity (in the Municipal Court) to cross-examine the witnesses. The Superior Court motion judge allowed the defendant's motion. He ordered that the subsequent deposition consist of cross- and redirect examination only, and that it be completed by December 5, 1986. Schindler was cross-examined on December 2, but Storella never was cross-examined because the Commonwealth asserted that it was unable to locate him. When Storella still had not been located by March, 1987, a capias was issued for his arrest.

On January 21, 1988, the defendant moved to exclude Storella's testimony. On February 8, 1988, the Commonwealth moved to have Storella declared unavailable and for permission to use his rule 35 deposition at trial against the defendant. A second Superior Court judge, without holding an evidentiary hearing, allowed the Commonwealth's motion and denied the defendant's motion. He determined that the defendant had been "provided with an adequate opportunity

to effectively cross-examine" Storella and that Storella's testimony was "sufficiently reliable."

The trial judge, in a hearing regarding Storella's availability and the admissibility of his rule 35 testimony, found that Storella was unavailable and that the defendant had waived his right to cross-examine Storella. The judge admitted Storella's rule 35 testimony.

1. *The rule 35 deposition testimony and waiver.* The defendant argues that, as soon as he waived the probable cause hearing, the case no longer was within the jurisdiction of the Municipal Court and, therefore, the Municipal Court judge was without authority to allow the Commonwealth leave to take rule 35 depositions. This argument is without merit. The case remains within the court's jurisdiction until an indictment is returned. Any other rule would place cases outside of the jurisdiction of any court between the time when a probable cause hearing is waived or held in the District or Municipal Court and the indictment is returned in the Superior Court. The Municipal Court judge had jurisdiction and discretionary authority to allow the motion to depose the witnesses.

The defendant next argues that the Municipal Court judge erred in allowing the Commonwealth's motion to depose witnesses pursuant to rule 35 because, the defendant claims, the Commonwealth did not set forth sufficient grounds for allowing the depositions. This argument, too, is without merit. Rule 35 of the Massachusetts Rules of Criminal Procedure was written in substantial conformity with Fed. R. Crim. P. 15. See Reporters' Notes to Mass. R. Crim. P. 35, Mass. Gen. Laws Ann., Rules of Criminal Procedure at 633 (West 1980). Both rules allow the testimony of prospective witnesses to be taken prior to trial in "exceptional circumstances" when "the interest of justice" so requires. See note 5, *supra.* "[P]hysical unavailability [is] but one factor in determining whether 'exceptional circumstances in the interests of justice' exist." *United States* v. *Johnson,* 752 F.2d 206, 209 (6th Cir. 1985). The Commonwealth presented evidence that: (1) both Schindler and Storella feared for their safety;

(2) weapons and ammunition had been seized from the homes of two of the defendants; (3) Schindler lived in the defendants' neighborhood; and (4) Storella was acquainted with the defendants and played a role, albeit a supporting one, in the crime. In these circumstances, the Municipal Court judge could conclude that the Commonwealth legitimately was concerned that the witnesses might be unwilling or unable to testify at trial, and that this concern could be alleviated by allowing the Commonwealth's rule 35 motion. Cf. *id.* (taking of deposition was proper where defendant refused to testify at trial due to fear for his own and his family's safety).

The standard for reviewing a trial court judge's ruling on a rule 35 motion is abuse of discretion. *United States* v. *Keithan*, 751 F.2d 9, 12 (1st Cir. 1984). The judge did not abuse his discretion in allowing the Commonwealth's rule 35 motion. Even if the Commonwealth's evidence had been less compelling, we likely would find no abuse of discretion because, "[w]hen the question is close[,] a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence." *United States* v. *Mann*, 590 F.2d 361, 366 (1st Cir. 1978). Indeed, ordering the deposition and requiring the cross-examination may well insure the safety of witnesses.

The defendant argues that the trial judge erred in admitting the uncross-examined deposition testimony in violation of the defendant's confrontation rights. We agree. Prior recorded testimony, if it meets certain conditions, may be admitted at trial. In order not to run afoul of the defendant's confrontation rights under the Sixth Amendment, it should be admitted only if it has been established that (1) the witness is unavailable to testify,[7] and (2) the prior testimony

---

[7] In the absence of either cross-examination or a judicial order to cross-examine the witness or forgo the cross-examination, there is no foundation on which to base the defendant's waiver of his right to cross-examine. Therefore, we do not reach or discuss whether the witness was unavailable. The facts are conflicting, and we, of course, do not resolve factual disputes.

bears sufficient indicia of reliability. *Ohio* v. *Roberts*, 448 U.S. 56, 65-66 (1980). Accord *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 427 (1988); *Commonwealth* v. *Trigones*, 397 Mass. 633, 637 (1986); *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982).

A witness's prior recorded testimony bears adequate indicia of reliability for confrontation clause purposes if opposing counsel had an adequate opportunity to cross-examine the witness and availed himself or herself of that opportunity at the prior hearing. *Ohio* v. *Roberts, supra* at 73. Accord *Bohannon, supra* at 747. However, actual cross-examination, while usually sufficient, is not necessary to satisfy the reliability component. A reasonable opportunity to cross-examine also may render the testimony admissible. See *United States* v. *Zurosky*, 614 F.2d 779, 793 (1st Cir. 1979), cert. denied, 446 U.S. 967 (1980) (defense counsel had meaningful opportunity to question witness, but made tactical decision not to do so; therefore, his confrontation rights were not denied); *Phillips* v. *Wyrick*, 558 F.2d 489, 496 (8th Cir. 1977), cert. denied, 434 U.S. 1088 (1978) ("Once the opportunity to cross-examine has been accorded, the confrontation requirement is fulfilled. . . . The actual use then made of the opportunity becomes a matter of defense strategy, and deliberate trial tactics do not ordinarily exact constitutional protection" [citations omitted]). Our cases discussing the right to cross-examination under the Sixth Amendment to the United States Constitution are in accord. See *Commonwealth* v. *Ortiz*, 393 Mass. 523, 532 (1984) ("The prior testimony of the currently unavailable witness must have been given 'in a proceeding addressed to substantially the same issues as in the current proceeding, with *reasonable opportunity and similar motivation on the prior occasion for cross-examination* of the declarant by the party against whom the testimony is now being offered' " [emphasis added], quoting *Commonwealth* v. *Meech*, 380 Mass. 490, 494 [1980]); *Commonwealth* v. *Martinez*, 384 Mass. 377, 381 (1981) (one of the elements necessary to make grand jury testimony of unavailable witness admissible is *"opportunity for cross-examina-*

*tion of the witness* at the prior hearing by a person against whom the testimony is being offered" [emphasis added]); *Commonwealth* v. *Canon*, 373 Mass. 494, 501 (1977), cert. denied, 435 U.S. 933 (1978) ("We do not think the [Supreme] Court intended to lay down an absolute requirement of actual cross-examination as well as adequate opportunity for cross-examination for cases like the present in which there was no problem of ineffective assistance of counsel"); *Andrews, petitioner*, 368 Mass. 468, 476-477 (1975) (admission of prior testimony does not violate Sixth Amendment confrontation clause where defense counsel declined opportunity to examine witness at prior hearing).

The central purpose of rule 35 is to "preserve evidence. . . . While it is true that it is far more desirable to secure the actual presence of a potential witness in criminal cases, there are situations in which the use of depositions is required in order to assure that the ends of justice are met, e.g., when a witness' attendance cannot be secured . . . ." Reporters' Notes to rule 35 (a). Thus, the defendants are not entitled to delay cross-examination until such time as, in their view, they have a "reasonable opportunity to cross-examine." Such an interpretation would vitiate rule 35. The question whether there was a "reasonable opportunity to cross-examine" is for the court. Cross-examination, to pass muster under the confrontation clause, does not have to be a perfect cross-examination. See *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" [emphasis in original]); *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973) (the right to cross-examine "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal process"). Our cases are in accord. See *Commonwealth* v. *Siegfriedt, supra* at 429 ("fact that there may have been a more extensive cross-examination . . . does not undermine the reliability of the otherwise trustworthy, previously recorded testimony so as to preclude its admission");

*Commonwealth* v. *Trigones*, 397 Mass. 633, 639 (1986)
(prior testimony is sufficiently reliable even though defendant
did not adequately pursue opportunity to cross-examine wit-
ness on bias); *Commonwealth* v. *Mustone*, 353 Mass. 490,
494 (1968) ("If [the defendants] failed to cross-examine any
witness fully at the probable cause hearing, they necessarily
assumed the risk that the witness would die or become un-
available before trial, so that his initial testimony could be
admitted at trial"); *Commonwealth* v. *DiPietro*, 4 Mass.
App. Ct. 845 (1976), *S.C.*, 373 Mass. 369 (1977) ("It is im-
material that for tactical reasons the defendant did not cross-
examine his girl friend in greater depth at [the earlier hear-
ing]. The constitutional requirement is satisfied if the defend-
ant is afforded the opportunity of cross-examination" [foot-
note omitted]). Once the judge sets a reasonable deadline for
the defendant to cross-examine the witness, the defendant
cannot delay cross-examination by arguing that his cross-ex-
amination would be better if he were given more time to pre-
pare, for this will always be so.

The Municipal Court judge could have and should have
set a deadline by which the defendant had to cross-examine
the witness or waive his right to do so. However, he did not.
That failure is fatal to the Commonwealth's claim of waiver.
The Municipal Court judge did not hold a hearing on the
time needed for a "reasonable opportunity to cross-examine."
He did not rule that the defendant had had a reasonable op-
portunity to cross-examine. He did not give any notice to the
defendant that failure to cross-examine by a certain date
could be or would be viewed as a waiver of the right to cross-
examine the witness. The judge should have resolved the dis-
pute and set a date for cross-examination;[8] instead, he
merely left the parties to their own remedies.

---

[8]The defendant asserts that he did not want to cross-examine the witness
to preserve his argument that the Municipal Court lacked jurisdiction once
the defendant waived the probable cause hearing. The judge still should
have ordered cross-examination by a date certain. The defendant could
have cross-examined the witness while preserving his objection or forgone
the opportunity to cross-examine and relied on his jurisdictional argument.

"[T]he decisions of [the United States Supreme Court] and other courts throughout the years have constantly emphasized the necessity for cross-examination as a protection for defendants in criminal cases. . . . There are few subjects, perhaps, upon which [the Supreme] Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer* v. *Texas*, 380 U.S. 400, 404-405 (1965).

The proceedings in the Municipal Court were in early March. The indictments were returned in May, 1986. After the Municipal Court proceedings, the Commonwealth never moved to complete the deposition. It was only after the defendant filed a motion to complete the deposition in October, 1986, that the issue was again raised in the Superior Court. By the time a Superior Court motion judge finally set a deadline for completion of the depositions, Storella could not be found.[9] In view of Storella's importance to the Commonwealth's case, the Commonwealth's position that, in these circumstances, the defendant had been afforded a fair opportunity to cross-examine is untenable. The defendant was not given any notice that failure to cross-examine Storella by a certain date would result in a waiver of the right to cross-examine.

The defendant at no time expressly waived his right to cross-examine; on the contrary, he objected each time the Commonwealth argued that his actions constituted a waiver. Absent a direct order to complete or forgo cross-examination, there was no basis for the subsequent determination that the defendant had waived cross-examination. Therefore, it was error to admit Storella's uncross-examined deposition testimony.

---

[9]Although the defendant contests this fact, we accept the Commonwealth's version of the events for the purposes of deciding this issue. See note 7, *supra*.

2. *Issues that may arise at retrial.* We discuss the following claims of error raised by the defendant because they may arise at retrial.

a. *Polygraph evidence.* The defendant filed a motion for a polygraph examination and to have the results admitted in evidence. The defendant's request was denied. The defendant argues that the motion judge erred in denying his motion for a court-ordered polygraph examination. This argument is disposed of by our holding in *Commonwealth* v. *Mendes*, 406 Mass. 201, 202 (1989) (polygraph evidence inadmissible either to prove innocence or guilt or to impeach or corroborate testimony).

b. *Schindler's in-court and out-of-court identifications of the defendant.* The defendant participated in one of three separate videotaped lineups conducted on February 28, 1986, pursuant to an order of a judge of the Municipal Court. Schindler watched the lineups through a one-way mirror. Schindler was then escorted out of the viewing area to make his identifications. Defense counsel, although present at the lineups,[10] did not ask to be present when Schindler made the identifications. Subsequently, during his rule 35 deposition, Schindler identified the defendant from among those seated in the spectators' section of the courtroom as one of the perpetrators. The defendant argues that, because (1) Schindler was a former Middlesex County assistant district attorney, presumably familiar with lineups; (2) the murders occurred in the North End, "the renowned hub of Boston's Italian American community"; (3) no other participants with Italian looking features or last names allegedly were included in the lineup; (4) the defendant's dark hair, eyes and complexion allegedly identify him as being of Italian lineage; (5) all the other participants in the lineup were over five feet, six inches tall, and Schindler had described one of the individuals he viewed on the night of the shooting as having a height as

---

[10]At the time of the lineup, defense counsel asked that his client be allowed to change places with another participant in the lineup. The Commonwealth agreed to this request.

short as five feet, four inches; and (6) the defendant's long hair and slight build allegedly distinguished him from the other participants in the lineup, the out-of-court lineup was unnecessarily suggestive. He also argues that Schindler's observations were unreliable, and that he had a right to have counsel present when Schindler identified the defendant at his postlineup interview. As a result, he argues, due process mandates the suppression of both identifications.

"The burden is on the defendant to establish by a preponderance of the evidence that impermissibly suggestive procedures were used at the lineup." *Commonwealth* v. *Simmonds*, 386 Mass. 234, 239 (1982), citing *Commonwealth* v. *Botelho*, 369 Mass. 860, 867 (1976). The fact that each person in the lineup may not have closely resembled the defendant does not render the lineup impermissibly suggestive. Cf. *Commonwealth* v. *Melvin*, 399 Mass. 201, 207 (1987) (fact that defendant was only person in photographic array wearing a sling held not to constitute unnecessary suggestiveness, even though witness had seen defendant injuring his shoulder during commission of the crime); *Simmonds, supra* at 240 (no unnecessary suggestiveness found where defendant was one of only three members of seven-person lineup without a moustache, and several of lineup members wore standard, police-issued pants). Absent error on the part of the judge, his factual findings stand. *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). However, "[o]ur appellate function requires that we make our own independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found.' " *Commonwealth* v. *Jackson*, 377 Mass. 319, 325 (1979), quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977). Because the out-of-court lineup was not unnecessarily suggestive, it did not "taint" the in-court identification. *Botelho, supra* at 865.

The judge who denied the motion to suppress the identification testimony, after reviewing the videotape, found that (1) the majority of the lineup participants were young white males all of whom had one or more dark features; (2) at least five other members of the lineup were similar in height

to the defendant; and (3) at least two other members had hair of the same length as the defendant's. The judge properly rejected the defendant's argument that Schindler's experience as a former assistant district attorney gave him special knowledge of lineup procedures that would cause him to single out the defendant. There is no evidence in the record to support that argument. After reviewing the videotape, we conclude that the judge's findings are supported by the evidence. The lineup procedure was not unnecessarily suggestive. Because the out-of-court lineup was not unnecessarily suggestive, it did not "taint" the in-court identification. *Botelho, supra* at 865.

Because we conclude that the identification was not unnecessarily suggestive, it is unnecessary for us to reach the question whether Schindler's identification meets the "reliability test." See *Commonwealth v. Venios,* 378 Mass. 24, 25 (1979). We note, nevertheless, that a review of the record also supports the judge's findings that Schindler's observations were reliable. From his apartment overlooking the park where the murders occurred, at a distance of approximately fifty feet, Schindler observed the defendant descend a stairwell which was illuminated by a lamp at its top. The defendant was moving toward Schindler at the time. Schindler paid close attention to the events he observed in the park, and was able to describe the defendants' clothing and hair color to the police. The lineup took place nine days after the incident.

In *Commonwealth v. Charles,* 397 Mass. 1, 5 (1986), without deciding whether we would adopt the rule ourselves, we noted that the rationale behind decisions which have held that a defendant has a right to have counsel present at a postlineup interview is to enable defense counsel to "ensure that the procedure does not suggest who the prosecutor believes committed the crime." The short answer to defendant's argument that he has been deprived of his due process rights because counsel was not present during Schindler's postlineup interview is apparent from viewing the videotape of the lineup proceedings. The defendant's counsel, who was present at the lineup and could have asked to be present at

the interview, did not request to be present and did not seek a court order allowing him to be present.[11] Moreover, the defendant is unable to show that Schindler's identification was a product of any suggestion, urging, or questioning on the part of the prosecutor.

The majority of Federal courts that have considered whether the defendant has a right to counsel at a postlineup interview of a witness have found that no such right exists. See *Hallmark* v. *Cartwright*, 742 F.2d 584, 585 (10th Cir. 1980); *United States* v. *White*, 617 F.2d 1131, 1135 (5th Cir. 1980); *United States* v. *Bierey*, 588 F.2d 620, 624-625 (8th Cir. 1978), cert. denied, 440 U.S. 927 (1979); *United States* v. *Tolliver*, 569 F.2d 724, 728 (2d Cir. 1978); *United States* v. *Parker*, 549 F.2d 1217, 1223 (9th Cir.), cert. denied, 430 U.S. 971 (1977); *United States* v. *Cunningham*, 423 F.2d 1269, 1274-1275 (4th Cir. 1970). See also *Graham* v. *United States*, 377 A.2d 1138, 1140 (App. D.C. 1977), cert. denied, 434 U.S. 1022 (1978). In *Commonwealth* v. *Charles*, *supra* at 6, we noted that, although it was unnecessary for us to decide the issue, these cases "holding that defense counsel does not have a right to be present at a postlineup interview would appear to represent the better reasoned view." We will not consider a different rule for Massachusetts in the absence of any objection, request to the court for an order, or other evidence in the record that such a request was made prior to the lineup.

At the hearing on the defendant's motion to suppress the in-court and out-of-court identifications, defense counsel sought to question one of the investigating police officers about the lighting conditions at the crime scene and Schin-

---

[11]We note that counsel for the defendant did raise other unrelated objections to the lineup on that occasion. Earlier that day the defendant petitioned, pursuant to G. L. c. 211, § 3, a single justice of this court for relief from the Municipal Court judge's order that a lineup be conducted. The defendant objected to (1) the lack of a pre-lineup evidentiary hearing; (2) the fact that the identity of the witnesses would not be disclosed at the lineup; and (3) the lack of notice to the defendant. Relief was denied. Counsel for the defendant renewed his objections following the lineup, but did not request to be present at the postlineup interview.

dler's view of the area on the night of the murders. The defendant sought to pose these questions in order to cast doubt on the reliability of Schindler's observations. The judge ruled that these were questions of fact for the jury and ordered the defendant's counsel to restrict his questions to the issue of the identification procedure. The defendant argues that the motion judge erred in so limiting his cross-examination. The reliability of Schindler's observations is an issue in a motion to suppress only if the identification procedure is found to be unduly suggestive — which is not the case here. See *Venios, supra* at 25. There was no error.

c. *The defendant's motion to dismiss the indictments.* The defendant argues that the motion judge erred in failing to dismiss the grand jury indictments against him. The basis of this argument is that the grand jury should have been apprised of certain allegedly exculpatory evidence. One item of allegedly exculpatory evidence consisted of the defendant's polygraph results. As to this piece of evidence, the defendant's argument is disposed of by our holding in *Mendes, supra.* The other allegedly exculpatory evidence consisted of a prior, allegedly inconsistent statement made by Storella[12] and a statement made by another witness that contradicted one aspect (not directly related to the murders) of Storella's testimony.[13]

The Commonwealth "is not required to present all possibly exculpatory evidence to a grand jury." *Commonwealth* v. *Connor,* 392 Mass. 838, 854 (1984). The Commonwealth, however, is required to alert the grand jury to "exculpatory evidence that would greatly undermine the credibility of an important witness." *Commonwealth* v. *Mayfield,* 398 Mass. 615, 620-621 (1986), citing *Connor, supra* at 854. While there is no doubt that Storella was an important witness, the allegedly exculpatory evidence was not of that nature. Fur-

---

[12]Storella initially denied any involvement whatsoever in the murders.

[13]Michael Pittore, an acquaintance of Storella, denied Storella's allegation that they had had a conversation with one of the victims concerning whether DiBenedetto still sold cocaine.

thermore, the grand jury was informed that Storella was testifying in exchange for immunity from prosecution for conspiracy to commit robbery. There was no error.

The judgments are reversed, the verdicts set aside, and this case is remanded to the Superior Court for a new trial.

*So ordered.*