COMMONWEALTH vs. FRANK DiBENEDETTO
(and three companion cases[1]).

Suffolk. September 15, 1992. - December 28, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Constitutional Law*, Confrontation of witnesses, Double jeopardy. *Witness*, Unavailability, Cross-examination. *Error*, Harmless. *Evidence*, Previous testimony of unavailable witness, Cross-examination. *Homicide. Practice, Criminal*, Transfer hearing. *Delinquent Child. Jurisdiction*, Delinquent child, Transfer hearing.

In the case of a criminal defendant who was not afforded an adequate opportunity, under the Sixth Amendment to the United States Constitution, to cross-examine a prosecution witness at a pretrial deposition taken pursuant to Mass. R. Crim. P. 35, the error in admitting the deposition as evidence against him at his murder trial, when the witness was unavailable to testify, was not harmless beyond a reasonable doubt, where the uncross-examined deposition was the only evidence identifying the defendant as the person who shot one of the victims. [39-41]

Where a criminal defendant was not afforded a constitutionally adequate opportunity to cross-examine a prosecution witness at the defendant's juvenile transfer hearing, the admission of the witness's transcribed testimony at the defendant's murder trial, when the witness was unavailable to testify, violated the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. [41-44]

Principles of double jeopardy did not bar the retrial of a criminal defendant whose conviction was reversed based on evidence improperly admitted at his trial although, after excluding the improperly admitted evidence, there remained insufficient properly admitted evidence to justify a conviction. [45-46]

In a case in which the indictments against a defendant were remanded for a new trial, no reason appeared for a further remand for a new probable cause hearing on the defendant's transfer from a Juvenile Court where certain alleged new evidence, tending to impugn the credibility of a prosecution witness, was neither credible nor material to the issue whether the defendant committed the crimes and where there was no

[1]One against Frank DiBenedetto and two against Louis Costa.

error in the Juvenile Court judge's other findings in determining that the defendant should be tried as an adult. [47-50]

INDICTMENTS found and returned in the Superior Court Department on May 21, 1986.

Pretrial motions were heard by *Charles R. Alberti*, J., and the cases were tried before *Robert W. Banks*, J.

*Wendy Sibbison* for Frank DiBenedetto.

*Andrew L. Mandell* for Louis R. Costa.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Frank DiBenedetto, is one of three defendants convicted of murder in the first degree for the killing of Joseph Bottari and Frank Angelo Chiuchiolo. See *Commonwealth* v. *Tanso*, 411 Mass. 640, cert. denied, 112 S. Ct. 3033 (1992). The main issue in *Tanso* was whether the "the trial judge's admission in evidence, over objection, of the deposition testimony of an unavailable witness who had not been cross-examined" was error. We determined that "the admission of the deposition testimony violated the defendant's right to confrontation under the Sixth Amendment to the United States Constitution." *Id.* at 641-642. DiBenedetto asserts that his case is governed by our opinion in *Tanso*. The Commonwealth concedes that, as a result of our holding in *Tanso*, the admission of the deposition violated DiBenedetto's right to confrontation, but argues that confrontation rights are subject to harmless error analysis. The Commonwealth contends that the admission of the deposition testimony was harmless error. Therefore, the Commonwealth asserts that we should affirm DiBenedetto's convictions. We conclude that the admission of the uncross-examined deposition does not meet the standards necessary for a constitutional error to be determined "harmless error." Accordingly, DiBenedetto is entitled to a new trial. We comment briefly on DiBenedetto's claim that double jeopardy

precludes his retrial for murder in the first degree.[2] We reject that argument.

Louis Costa, the third defendant, also appeals from two convictions of murder in the first degree. See *Commonwealth v. Tanso, supra.* Costa challenges the trial judge's admission in evidence, over objection, of the testimony from the probable cause portion of the juvenile transfer hearing of a witness who was unavailable at the time of trial. Costa asserts that the scope of cross-examination at the juvenile transfer hearing was not adequate because the judge limited it. He also challenges his transfer from the Juvenile Court. For the reasons stated in the opinion, we conclude that the testimony from the juvenile transfer hearing would have been admissible had the scope of the cross-examination not been restricted by the judge. As we read the record, Costa did not have a full and therefore an adequate opportunity to cross-examine the witness. Accordingly, Costa is entitled to a new trial. We also comment briefly on Costa's challenges to his transfer from the Juvenile Court. We reject that claim.

1. *The admission of the uncross-examined deposition as harmless error.*[3] The Commonwealth argues that a claim of Federal constitutional error under the confrontation clause is subject to a harmless error analysis.[4] The Commonwealth asserts that the admission of Storella's uncross-examined deposition was harmless error. We agree with the Commonwealth that error in the admission of the uncross-examined deposition is subject to a harmless error analysis. We do not agree that the admission of the uncross-examined deposition testimony against DiBenedetto meets the constitutional test for "harmless error."

The Supreme Court has held that constitutional violations that do not affect the "substantial rights" of a party should

---

[2]Costa's appeal arises in a different context and is discussed *infra.*

[3]For purposes of DiBenedetto's appeal, the facts stated in *Commonwealth v. Tanso, supra* at 642-650, are the same.

[4]We decided *Commonwealth v. Tanso* on a Federal constitutional basis, and therefore we consider the question of harmless error on the same basis.

be analyzed to determine whether the error was "harmless beyond a reasonable doubt." *Chapman* v. *California*, 386 U.S. 18, 23 (1967). In *Delaware* v. *Van Arsdall*, 475 U.S. 673, 682 (1986), the Supreme Court held that "the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." See also *Harrington* v. *California*, 395 U.S. 250 (1969). Thus, the improper admission of uncross-examined testimony, in violation of a defendant's confrontation rights, will not be reversible error "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Van Arsdall, supra* at 681.

To determine whether the improper admission of uncross-examined testimony was harmless beyond a reasonable doubt, the Supreme Court listed factors to be considered. "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684.

In applying the factors listed above to this case, we note that Storella's testimony was important to the Commonwealth's case: the Commonwealth itself so stated in requesting that Storella be deposed according to Mass. R. Crim. P. 35, 378 Mass. 906 (1979). Storella's deposition indicated that he knew DiBenedetto, could identify DiBenedetto, and could describe the scene of the crime. Storella alone provided the motive for the murders. Significantly, only Storella's deposition identified DiBenedetto as the person who shot Bottari.[5] Thus, the deposition testimony was not cumulative. Ad-

---

[5] The Commonwealth offered an identification by Schindler, another witness, that corroborated Storella's testimony but not on the issue of who shot Bottari. Schindler testified that he heard sounds and looked out his apartment window into the park. He testified that he saw an individual he later identified as DiBenedetto shoot at one of the victims as the victim lay

ditionally, we note that, after deliberations were in progress, the jurors asked that the deposition testimony be reread to them.

Courts that have construed the language in the *Chapman* line of cases have held that the government bears the burden of proving that the error was not a substantial factor in the jury's decision to convict.[6] See *Brown* v. *Dugger*, 831 F.2d 1547, 1554 (11th Cir. 1987); *United States* v. *Kelly*, 790 F.2d 130, 138 & n.6 (D.C. Cir. 1986). The Commonwealth's burden was to prove that the admission of the uncross-examined deposition was not a substantial factor in the jury's decision to convict. The Commonwealth has not met its burden of proving the admission of the deposition was "harmless error." We conclude DiBenedetto must have a new trial.

2. *Admissibility of Storella's prior recorded testimony.*[7] Costa was born in October, 1969; on the date of the commission of the offenses with which he was charged, Costa was sixteen years old. Therefore, the cases against him began as juvenile proceedings. Storella testified at the probable cause portion of the transfer hearing and limited cross-examination was allowed. Costa was transferred and tried as an adult. Prior to trial, Costa filed a motion in limine seeking to exclude the prior recorded testimony of Storella given at the probable cause portion of the juvenile proceedings. After a hearing regarding Storella's availability, the trial judge found that Storella was unavailable. The judge ruled that Storella's prior recorded testimony could be used, subject to

---

on the ground. That victim was Chiuchiolo. Schindler's initial description of the shooter was that the individual he had seen was about five feet nine inches tall, while the defendant is six feet three inches. Schindler identified DiBenedetto as the individual whose face he saw as the shooter of Chiuchiolo climbed the stairs leading out of the park.

[6]The Commonwealth asserts that Schindler, a disinterested witness and an attorney, would be more credible than Storella. The Commonwealth claims that Storella might have been viewed as a participant and hence less credible than Schindler. However, that fact alone does not make the error harmless beyond a reasonable doubt.

[7]For purposes of Costa's case, the facts as to the homicides are the same as in *Commonwealth* v. *Tanso, supra.*

conditions.[8] At Costa's trial, over objection of Costa's counsel, the judge admitted the prior recorded testimony from the probable cause hearing in the Juvenile Court against Costa. Four days after deliberations began, the jury returned verdicts of murder in the first degree against Costa. Costa argues that he did not have a full and, therefore, an adequate opportunity to cross-examine the witness at the juvenile transfer hearing and therefore admission of that prior recorded testimony was error. We agree.

In *Commonwealth* v. *Mustone*, 353 Mass. 490 (1968), we held that, in the event of a witness's unavailability, "his testimony at the prior proceeding is admissible at the defendants' trial under general principles of the law of evidence, if the former testimony can be reproduced with substantial completeness and accuracy. No violation of the defendants' constitutional right of confrontation will be involved." *Id.* at 492. Storella's testimony was under oath, given before a judge, and recorded by a stenographer. Thus, the testimony was admissible against Costa at trial unless the defendant did not have a full and, therefore, an adequate opportunity to cross-examine the witness at the time of hearing. *Id.* at 493. We turn to the transfer hearing.

Before Storella was brought before the Juvenile Court for his testimony, defense counsel suggested that the judge appoint an attorney for the witness. Defense counsel stated that Storella had been offered immunity only with respect to one crime, conspiracy to rob DiBenedetto, and that the witness should be made aware of his constitutional right against self-

---

[8]In a memorandum of decision and ruling on Costa's motion in limine, the motion judge placed the following conditions on the use of Storella's testimony at the probable cause hearing: "First, prior to introduction of the evidence, the Commonwealth must demonstrate that Storella is unavailable. Second, the court, being cognizant that Costa's codefendant DiBenedetto did not have an opportunity to cross-examine Storella at the juvenile transfer hearing, will provide the jury with appropriate limiting instructions. Finally, only questions and answers allowed by the District Court judge will be read to the jury. Costa's counsel will have further opportunity to object to the admission of the testimony allowed in the District Court on a question by question basis in a hearing prior to trial."

incrimination. Defense counsel also acknowledged that there were "going to be allegations that this particular fellow [Storella] was a participant, and I think he should know that perjury in a capital crime is punishable by life imprisonment." The Commonwealth objected to the appointment of a lawyer for Storella. The judge asked what promise the Commonwealth had made to the witness in order to secure his testimony. The prosecutor answered that they had offered Storella immunity on the charge of conspiracy to rob DiBenedetto.[9] The prosecutor also stated that the witness knew that he ran "the risk in his testimony that if he is implicated as a participant in the murder that he has no promise, reward or offer of inducement with regard to those charges." The prosecutor noted that Storella would turn eighteen in approximately one month. Defense counsel argued that no lawyer representing Storella would allow his client to testify without a general grant of immunity for all crimes. In addressing defense counsel's concerns, the prosecutor noted that the Commonwealth had provided defense counsel with a copy of the statement Storella had given to the police; that Storella had received the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and been fully informed of his right to counsel; that Storella had waived his right to counsel at the commencement of the proceeding where he gave his statement; that Storella had not at any time attempted to engage counsel; and that the Commonwealth had informed Storella that, in exchange for his full and truthful testimony, he would not be prosecuted for conspiracy to rob.

The judge ruled that, "if there's any question that is asked by you that would seek to elicit any testimony that would incriminate [Storella], I'm going to stop the proceedings and appoint counsel." Defense counsel objected to this method of protecting Storella's constitutional rights. The defendant

---

[9]The judge asked if the agreement was in writing; the prosecution said it was in the handwriting of another assistant district attorney. That written agreement apparently was not presented to the judge.

claimed that cross-examination would thereby be restricted.[10] The judge overruled the objection.

Storella then was brought into the courtroom. The judge asked Storella if he understood the nature of the immunity he had received from the Commonwealth. The judge said to Storella that, "if there are any other areas [other than the conspiracy to rob] that you may be asked about and if there are any answers that you may give that I may feel would be incriminating, I've told the Commonwealth that I would stop the questioning." After this colloquy, Storella said that he understood that he would not have to answer any questions that might tend to incriminate him. Direct and cross-examinations were limited to the conspiracy to rob DiBenedetto.[11]

The judge's declaration that Storella would not have to answer any questions that might incriminate him denied Costa the right to cross-examine the witness on issues other than that for which Storella had a promise not to prosecute. Defense counsel objected to that ruling.[12] We agree with Costa that as a result of the judge's ruling Costa did not have an adequate opportunity to cross-examine Storella fully. Cf. *Commonwealth* v. *Salim*, 399 Mass. 227, 235 (1987) (no error where defendant was permitted, at probable cause hearing, to cross-examine a witness without limitation). Defense counsel was unable to interrogate Storella on any crimes except the conspiracy to rob. Because the record reflects that Costa was denied an opportunity to cross-examine Storella fully, there must be a new trial.

---

[10]The defense attorney stated that "[i]f you do it that way, your Honor, the dough may get shot in my face." We do not know precisely what counsel meant. We interpret it as an objection to the procedure proposed by the judge. We caution attorneys against using expressions that do not lend themselves to easy interpretation by an appellate court.

[11]On cross-examination, the judge did allow defense counsel to ask Storella if he went into the park and shot the victims himself.

[12]The judge did sustain the defendant's objection to a question the Commonwealth asked that was beyond the scope of the conspiracy to rob DiBenedetto.

3. *Other issues likely to recur at retrial.*[13] a. *DiBenedetto's claim of double jeopardy.* DiBenedetto contends that the erroneous introduction of the deposition provided the only evidence against him on his conviction of murder in the first degree of Bottari. DiBenedetto asserts that judgment for him should be allowed on the conviction of murder in the first degree based on principles of double jeopardy. In making this argument, DiBenedetto relies on a suggestion in *Lockhart* v. *Nelson*, 488 U.S. 33, 34 (1988). In *Lockhart*, however, the Supreme Court held that, even if there would be insufficient properly admitted evidence to justify a conviction after improperly admitted evidence is excluded from consideration, the double jeopardy clause would not bar retrial of the defendant. The Supreme Court noted that a reversal based on ordinary trial errors such as incorrect receipt of evidence " 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect' " (emphasis added). *Id.* at 40, quoting *Burks* v. *United States*, 437 U.S. 1, 15 (1978). The Supreme Court emphasized that "[p]ermitting retrial in this instance is not the sort of governmental oppression at which the [d]ouble [j]eopardy [c]lause is aimed . . . . Our holding today thus merely recreates the situation that would have been obtained if the trial court had excluded [the improperly admitted] evidence." *Id.* at 42. "[W]e agree with those cases which hold that the double jeopardy principle does not automatically bar retrial 'where an insufficiency of evidence appeared only when material held on appellate review to have been erroneously admitted was notionally removed from the case.' " *Commonwealth* v. *Brouillet*, 389 Mass. 605, 608 (1983), quoting *Commonwealth* v. *Taylor*, 383 Mass. 272, 284 (1981). See *Denton* v. *Duckworth*, 873 F.2d 144 (7th Cir.), cert. denied, 493 U.S.

---

[13]The parties have briefed a number of issues not likely to recur or not likely to recur in the same context at retrial. We therefore do not discuss those issues.

941 (1989) (erroneous admission of prior conviction to establish habitual offender status does not bar retrial under double jeopardy clause); *Palmer* v. *Grammer*, 863 F.2d 588 (8th Cir. 1988) (appellate court required to look to all evidence, not just legally admitted evidence, to determine if retrial is permitted); *Glisson* v. *Georgia*, 192 Ga. App. 409, 410 (1989) ("In making a determination as to the sufficiency of the evidence the appellate court considers the evidence in its entirety, including, not excluding, that admitted [at] trial but found inadmissible on appeal. . . . The improper admission of inadmissible evidence is an example of trial error, in which case retrial is not precluded . . . [unless] the evidence is insufficient even with the erroneously admitted inadmissible evidence" [citations omitted]); *Thomas* v. *United States*, 557 A.2d 599 (D.C. 1989) (following *Lockhart*); *Illinois* v. *Stofer*, 180 Ill. App. 3d 158 (1989) (retrial permitted when a reviewing court determines that conviction must be reversed because evidence was erroneously admitted against defendant, and that without inadmissible evidence, there would be insufficient evidence to support a conviction); *Williams* v. *State*, 544 N.E.2d 161 (Ind. 1989) (when admissible evidence, supplemented by inadmissible evidence, was sufficient to support conviction, case can be remanded for retrial without offending protections afforded by the double jeopardy clause); *Nebraska* v. *Chambers*, 233 Neb. 235 (1989) (reversible error of improper admission of evidence does not bar retrial if all evidence, whether erroneously admitted or not, supports the action for the trial court or jury). There is no merit to this contention.[14]

---

[14]DiBenedetto also relies on *Commonwealth* v. *Kirouac*, 405 Mass. 557 (1989), and *Commonwealth* v. *Funches*, 379 Mass. 283 (1979), as support for his claim of double jeopardy. In *Funches*, however, the Commonwealth had made no showing that it reasonably could expect to produce any other admissible evidence than that which it had introduced at trial even where it had had a "fair opportunity to offer whatever proof it could assemble" on appeal. *Funches, supra* at 296. Although the defendant in *Kirouac* had not argued the issue, we noted the same point for consideration on remand. *Kirouac, supra* at 564. Here the Commonwealth has shown a reasonable

b. *Costa's juvenile transfer hearings.* On March 13 and 14, 1986, a probable cause hearing was held in the Juvenile Court and probable cause was found. A transfer hearing for Costa was held in the Juvenile Court on April 3 and 23, 1986.[15] On April 29, 1986, the judge made findings and entered an order transferring Costa to Superior Court for trial. On May 21, 1986, the Suffolk County grand jury returned two indictments against Costa, charging him with the murders of Joseph Bottari and Frank Chiuchiolo. Costa was arraigned and entered pleas of not guilty.

In October, 1986, Costa moved for dismissal based on alleged irregularities in the Juvenile Court judge's decision to transfer. The judge in the Superior Court, after hearing, remanded the matter. Revised findings were made and filed and the Superior Court judge denied both the motion to dismiss and a motion to reconsider.

General Laws c. 119, § 61, sets out the statutory requirements a judge must consider when determining whether a transfer should take place.[16] In the probable cause portion of a transfer hearing, the judge must find that there was probable cause to "believe that the child has committed the offense or violation charged." G. L. c. 119, § 61. The judge received

---

prospect of filling the gap in its proof if Storella testifies — and is cross-examined — at retrial. There is no merit to DiBenedetto's argument.

[15]Because the offenses of which Costa was accused involved "the infliction or threat of serious bodily harm" and because Costa, at the time of the alleged commission of the crime, was between his fourteenth and seventeenth birthdays, he was entitled to a juvenile transfer hearing to determine whether he should be tried as an adult or as a juvenile. G. L. c. 119, § 61.

[16]General Laws c. 119, § 61 (1988 ed.), in relevant part, states: "At said transfer hearing, . . . the court shall find whether probable cause exists to believe that the child has committed the offense or violation as charged. If the court so finds, the court shall then consider, but shall not be limited to, evidence of the following factors: (a) the seriousness of the alleged offense; (b) the child's family, school and social history, including his court and juvenile delinquency record, if any; (c) adequate protection of the public, (d) the nature of any past treatment efforts for the child, and (e) the likelihood of rehabilitation of the child." The statute has been amended since Costa's transfer hearing, but the amendments are not relevant.

evidence on the seriousness of the alleged offenses. *Id.* Costa was charged with two separate murders in the first degree. After a hearing, the judge found probable cause on each murder. Therefore, the judge stated that the "bold predisposition and the severe atrocity of this act bespeak the seriousness of the crimes for which he stands charged."

"[A] judge has considerable discretion, within this statutory framework, to determine whether a child should be treated as an adult." *A Juvenile* v. *Commonwealth*, 370 Mass. 272, 282 (1976). Unless the judge abused that discretion we will not disturb his findings. *Commonwealth* v. *Matthews*, 406 Mass. 380, 386 (1990). We have adopted a directed verdict standard to determine whether the evidence was sufficient to support a transfer. *Commonwealth* v. *Matthews*, *supra* at 388.

Costa asks that we remand the issue of the probable cause portion of his transfer from the Juvenile Court because, subsequent to the trial in the Superior Court, he obtained evidence that tended to impugn Storella's credibility. He asserts that this evidence would have altered the judge's findings in the probable cause portion of the juvenile transfer hearing. Costa argues that this entitles him to a new transfer hearing.[17]

The trial judge, in denying Costa's motion for new trial based on that evidence, ruled that the evidence "would have had little or no value as material which would bear upon the credibility of Storella." In view of the judge's ruling, Costa's argument that we remand this matter for a new probable cause hearing on his transfer from Juvenile Court on the issue of Storella's credibility is without merit.

The second factor the judge considered was Costa's family, school, and social history. The judge found that Costa's family life was one of discord. Costa admitted he does not re-

---

[17]Costa claims that we may consider new evidence not available at the time of the transfer hearing in evaluating the correctness of the transfer hearing. The judge, in denying the motion for new trial, ruled that the defendant had failed to establish that the evidence was credible. In these circumstances, we need not discuss that claim.

spect his mother. The judge found that Costa's mother was not able to set limits for him and exercised little control over him. The judge concluded that the "family unit would not be an asset in any rehabilitative process."

Costa had enrolled in three different high schools but was successful at none of them. He has not completed the tenth grade. Socially, the judge found that Costa actively participated in sports, played cards, listened to music, and drank a six-pack of beer each weekend night with his friends from the North End. The judge also found that there was no evidence that Costa had had any form of treatment.

In evaluating the likelihood of rehabilitation, the judge found that Costa was "anxiety-free and indifferent to any form of authority — parental, school, or legal." The judge also found Costa's action in deliberately shooting at the victims from close range showed a "conscious disregard for the pain and suffering of another human being." The judge ruled that no program available through the Department of Youth Services would be able to rehabilitate Costa. Therefore, the judge concluded that Costa was "outside the realm of possibility for rehabilitation within the juvenile justice system."[18]

Finally, the judge found that Costa, "by these actions [the shootings], his admitted history of aggressive behavior, his lack of anxiety, fear or remorse, and his disrespect for authority, in general, has demonstrated that he is an exceptionally dangerous individual who poses a substantial threat to the safety of the public. The protection of the public, in this case, can only be satisfied by the Massachusetts prison system."

---

[18]The judge found that Costa's age made it unlikely he could be rehabilitated within the juvenile justice system. He noted that "[e]ven if this court retained jurisdiction over the defendant and subsequently committed him to the DYS [Department of Youth Services], the best the Department could provide for him would be eight (8) to eighteen (18) months of secure treatment. That period of time will not satisfy the defendant's dire need for long-term secure and rehabilitative treatment." He also noted that "If the defendant were younger, family intervention might offer some hope in changing his patterns of interaction with his family members."

The judge, relying on *A Juvenile* v. *Commonwealth, supra* at 281-282, noted that the "transfer of children from the juvenile court for trial as adults in the superior court should be ordered only when warranted by exceptional circumstances." The judge found the circumstances in the case to be exceptional, given the nature of the crimes, Costa's family, school, and social history, his age, as well as Costa's lack of respect for authority. Consequently, the judge ordered the delinquency complaints against Costa to be dismissed and ordered criminal complaints to issue. There was no error.

The judgments are reversed, the verdicts set aside, and these matters are remanded to the Superior Court for a new trial.

*So ordered.*