COMMONWEALTH vs. KENT A. SIEGFRIEDT.

Suffolk.   April 5, 1988. — May 17, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Previous testimony of unavailable witness, Credibility of witness. *Constitutional Law*, Confrontation of witnesses. *Witness*, Unavailability. *Practice, Criminal*, Trial of issues together.

At the trial of an indictment for wilful and malicious burning of a dwelling house, the judge was warranted in concluding that the prosecution had engaged in a diligent search for an absent witness who had previously given testimony at a probable cause hearing in the same case, and that the witness was unavailable to testify at trial. [427]

At the retrial, after mistrial, of an indictment for wilful and malicious burning of a dwelling house, the judge correctly concluded that a certain absent witness, who had given testimony at a probable cause hearing in the same case, was unavailable to testify, and, where the same judge had presided at the defendant's original trial one week earlier, it was proper for him to base this conclusion on evidence of the prosecutor's efforts both before the first trial and before the second trial to locate the absent witness. [427-428]

Where defense counsel had extensively cross-examined a witness under oath at a probable cause hearing that focused on the same issue presented at the subsequent trial, the accurately preserved recorded testimony of the witness, who was unavailable to testify at trial, bore sufficient indicia of reliability to justify its admission in evidence at the trial. [428-430]

The language of art. 12 of the Massachusetts Declaration of Rights and G. L. c. 263, § 5, does not impose a stricter standard than that of the Sixth Amendment to the United States Constitution with respect to the admissibility of a witness's previously recorded testimony as evidence at a criminal trial. [430-431]

The record of a criminal trial disclosed no abuse of discretion in the judge's denial of the defendant's motion for a bifurcated trial on the issues of guilt and insanity. [431]

INDICTMENT found and returned in the Superior Court Department on September 9, 1983.

The case was tried before *Robert A. Mulligan*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Brownlow M. Speer*, Committee for Public Counsel Services, for the defendant.

*David B. Mark*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Kent A. Siegfriedt, was convicted on March 22, 1985, after a second jury trial,[1] of wilful and malicious burning of a dwelling house. There was evidence from which the jury could find that the defendant intentionally set his mattress afire. The judge committed the defendant, pursuant to G. L. c. 123, § 15 (*e*) (1986 ed.), to the Massachusetts Correctional Institution at Bridgewater for up to twenty days of examination. Subsequently, the defendant was sentenced to the Massachusetts Correctional Institution at Concord. On May 1, 1985, the defendant filed a timely notice of appeal. We allowed the defendant's request for direct appellate review.

The defendant raises three issues in this appeal. First, the defendant contends that his Sixth Amendment right to confront witnesses against him was violated when the judge admitted in evidence a tape recording of a missing witness's testimony given at a probable cause hearing. Second, the defendant argues that the allowance of the prior recorded testimony in evidence violated his State constitutional and statutory rights to meet his accuser "face to face" at his trial. Third, the defendant complains that the judge's denial of his motions for a bifurcated trial on the issues of the defendant's lack of criminal responsibility and on the merits of the indictment deprived him of due process of law. We reject these arguments.

1. *Prior recorded testimony.* On July 8, 1983, Christopher A. Martell testified under oath at the defendant's probable cause hearing in the Boston Municipal Court. Martell related that the defendant made an inculpatory statement to him shortly before the mattress fire began in the defendant's room in a

---

[1] The first jury trial began on March 12, 1985. A mistrial was declared on March 15, when the jury reported irreconcilable disagreement. Retrial began five days later before the same judge.

Beacon Hill rooming house. Counsel for the defense conducted a cross-examination of Martell. Before the probable cause hearing ended, a police officer requested that Martell communicate with the police if he changed his address. The witness disappeared, however, sometime after the hearing and failed to notify the police of his whereabouts.

After police officers were unsuccessful in their efforts to locate Martell, the Commonwealth filed a motion to allow the introduction of the witness's prior recorded testimony at the defendant's trial. During the hearing on the motion, Detective Lieutenant Louis Scapicchio described the Commonwealth's efforts to locate Martell.[2] The defendant objected to the introduction of Martell's testimony on the grounds that the Commonwealth had failed to establish a good faith effort to locate the witness, and the testimony was not reliable because the defendant did not have an adequate opportunity to cross-examine Martell during the probable cause hearing. The judge subsequently declared Martell to be an unavailable witness and allowed a tape of his prior recorded testimony to be played to the jury.[3]

---

[2]Lieutenant Scapicchio testified that, in December, 1984, he visited the address where Martell was residing at the time of the probable cause hearing. Martell had moved. Scapicchio then called Martell's employer and learned that Martell had quit one year earlier. The police received information that Martell had moved to a certain location, but investigation revealed that the witness had moved once again and left no forwarding address. Scapicchio checked with the post office and telephone company but gained no further information. A visit to the Registry of Motor Vehicles produced no record of Martell's possessing a driver's license. Scapicchio also checked for outstanding warrants and a criminal record for Martell. On at least twenty occasions, Scapicchio testified, he patrolled the area of the witness's last known address in an attempt to locate Martell.

[3]Before ruling on Martell's availability, the judge ordered Scapicchio to take a number of additional steps to find the witness. Pursuant to this directive, Scapicchio learned Martell's Social Security number and ran it through two law enforcement data bases without result. A second check with the Registry of Motor Vehicles was· equally unsuccessful. Through a former roommate, Scapicchio learned that the witness's real name was Albert Ciccarelli and that he had a brother in the area. Scapicchio communicated with the brother and learned that his family had not heard from the witness recently. A telephone call to Florida confirmed that the witness had not been in contact with his father or stepmother.

Prior recorded testimony may be admitted in evidence only when it is established that the witness is "unavailable" to testify at trial and the prior testimony is deemed "reliable." *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982). See *Commonwealth* v. *Salim*, 399 Mass. 227 (1987). We require proof of both necessity (shown by unavailability) and reliability because the introduction of previously recorded testimony directly implicates the defendant's Federal and State constitutional rights to confront witnesses against him.[4] *Commonwealth* v. *Bohannon*, *supra* at 741.

a. *Unavailability.* Before allowing the introduction of prior recorded testimony, the judge must be satisfied that the Commonwealth has made a good faith effort to produce the witness at trial. *Barber* v. *Page*, 390 U.S. 719, 724-725 (1968). While the defendant concedes that Martell was absent at the first trial, he insists that the witness was not unavailable in the constitutional sense. The defendant's argument is unpersuasive. On the facts before him, the judge was justified in concluding that the Commonwealth engaged in a diligent, although unsuccessful, search for Martell and that the witness was unavailable to testify at trial.

The defendant further contends that, after his first trial ended in a mistrial, the Commonwealth failed to conduct good faith efforts to secure the witness's presence at the second trial. The defendant cites *Commonwealth* v. *Bohannon*, *supra*, in support of his position that the Commonwealth cannot justify its inactivity by merely relying on the judge's prior finding of the witness's unavailability. The defendant's reliance on *Commonwealth* v. *Bohannon* is misplaced. In that case, we concluded that a motion judge abused his discretion by adopting another motion judge's finding, made eight months earlier, on a witness's unavailability rather than making his own determination at the time of the trial. *Id.* at 744. As we noted, the crucial

---

[4] The Sixth Amendment to the United States Constitution guarantees that, in all criminal prosecutions, an accused shall have the right to confront witnesses against him. Similarly, art. 12 of the Massachusetts Declaration of Rights provides that a defendant has the right "to meet the witnesses against him face to face."

inquiry is whether the witness is available "to testify in person *at the time* [the] former testimony is to be admitted in evidence." *Id.* at 744-745.

The instant case is readily distinguishable from *Commonwealth* v. *Bohannon, supra.* Here, the same judge presided at both trials. The judge was fully cognizant of the Commonwealth's extensive efforts during the first trial to locate the witness. After reasonably deciding that the witness was unavailable for the first trial, the judge reached the same conclusion for purposes of the second trial approximately one week later. The judge did so after hearing Lieutenant Scapicchio's testimony that additional telephone calls to the witness's family and periodic street patrols in the witness's former neighborhood yielded no new information.

It is clear from the judge's findings that he did not merely adopt his former ruling on Martell's availability as a witness.[5] Moreover, given the short time that separated the two trials, it was hardly necessary for the Commonwealth to repeat each of the steps already taken in its attempt to locate the witness. See *Ohio* v. *Roberts,* 448 U.S. 56, 74 (1980).

b. *Reliability.* After the Commonwealth has demonstrated that a witness is unavailable, it must then establish the reliability of the previously recorded testimony before a judge is warranted in admitting the record in evidence. *Commonwealth* v. *Trigones,* 397 Mass. 633, 637 (1986). The test for reliability involves two components. First, the testimony must be shown to be reliable when given. Second, it must be shown that the testimony was accurately preserved.[6] *Commonwealth* v. *Bohannon, supra* at 746.

The defendant contends that Martell's testimony should not have been admitted in evidence because it lacked sufficient

---

[5] The judge stated that: "I am finding, as I found last week, based upon the evidence presented last week by Lieutenant Scapicchio and based upon his presentation this morning, that the Commonwealth has made a diligent effort to locate Mr. Martell and that he is unavailable."

[6] The defendant does not dispute the reliability of the tape recording of the witness's testimony that was played for the jury. Accordingly, we limit our analysis to the first prong of the test.

indicia of reliability. Specifically, the defendant claims that his cross-examination of Martell during the probable cause hearing was constitutionally inadequate because he subsequently learned that the witness's real name was Albert Ciccarelli, Jr., and that the witness overstated his employment status and function while testifying. The defendant maintains that the jury would have been in a better position to evaluate Martell's credibility if defense counsel had cross-examined him on those points during the probable cause hearing.

Despite the defendant's implication to the contrary, he is not entitled under the confrontation clause to a cross-examination that is "effective in whatever way, and to whatever extent, the defense might wish." *Delaware* v. *Fensterer*, 474 U.S. 15, 20 (1985). In the instant case, the defendant was represented by counsel at the probable cause hearing. That hearing focused on the same issue subsequently presented at trial. The transcript reveals that the witness, while under oath, underwent extensive cross-examination. The underlying purpose of the confrontation clause of the Sixth Amendment was satisfied by the thorough cross-examination of Martell at the hearing. *California* v. *Green*, 399 U.S. 149, 166 (1970). *Commonwealth* v. *Bohannon, supra* at 747 (first component of reliability satisfied once Commonwealth establishes that witness testified under oath and was cross-examined during proceeding on substantially same issue).

The fact that there may have been a more extensive cross-examination during the probable cause hearing if defense counsel had questioned the witness about his assumption of another name and exaggerated employment status does not undermine the reliability of the otherwise trustworthy, previously recorded testimony so as to preclude its admission. See *California* v. *Green, supra* at 160-161. Rather, it is sufficient that the previous cross-examination of Martell provided the jury with a constitutionally adequate basis for evaluating the witness's credibility.[7] *Id.* at 161. We therefore conclude that the prior re-

---

[7] We note, however, that the jury did in fact receive all of the information bearing on Martell's credibility through the testimony of other witnesses at

corded testimony bore sufficient indicia of reliability to justify its admission in evidence.[8]

2. *State constitutional and statutory rights.* The defendant's second issue on appeal requires the resolution of the question whether the language of art. 12 and G. L. c. 263, § 5 (1986 ed.), provides the defendant with more protection against the introduction of a witness's previously recorded testimony than does the Sixth Amendment. We conclude that in these circumstances the specific language of art. 12 and G. L. c. 263, § 5, does not impose a stricter standard than that of the Sixth Amendment.

Article 12 provides in pertinent part that an individual accused of a crime "shall have a right . . . to meet the witnesses against him *face to face*" (emphasis added). Language to this effect is also set forth in G. L. c. 263, § 5 (1986 ed.). In addition, c. 263, § 5, contains the proviso that such a confrontation occur "at his trial."

The defendant contends that the terms "face to face" and "at his trial" effectively preclude the jury from considering the prior recorded testimony of a witness where, as here, the defendant had no opportunity to confront the witness in person before the jury. The defendant's argument is without merit. In *Commonwealth* v. *Gallo*, 275 Mass. 320, 329, 334 (1931), we concluded that art. 12 permitted the admission in evidence of previously recorded testimony upon a showing of necessity and reliability. In *Commonwealth* v. *Mustone*, 353 Mass. 490, 492 (1968), we reiterated that there is no violation of the

trial. John Ciccarelli, the witness's brother, testified at trial that his brother assumed the name "Chris Martell" because he was tired of being known as a "Junior." Richard Sorell, a former employer, testified that Martell was a janitor, not a "resident superintendent" as the witness had stated, and that Martell was not required to carry a walkie-talkie as part of his employment. Both men testified that Martell had a poor reputation for veracity.

[8] The defendant's reliance on *Smith* v. *Illinois*, 390 U.S. 129 (1968), and *Alford* v. *United States*, 282 U.S. 687 (1931), in support of his confrontation clause argument is misplaced. In each of those cases, the trial judge improperly restricted the scope of cross-examination and thereby denied the defendant his right to confront witnesses against him. In the instant case, there was no preclusive ruling on the scope of cross-examination during the probable cause hearing.

constitutional right of confrontation where the defendant had an adequate opportunity to cross-examine the witness and the prior testimony could be reproduced accurately. Here, both of these requirements were satisfied.

3. *Bifurcation.* The defendant also claims constitutional error in the judge's denial of his motions for a bifurcated trial on the issues of guilt and insanity. We have stated previously that generally there is no constitutional right to a bifurcated trial on the merits of the case and the issue of the defendant's lack of criminal responsibility. *Commonwealth* v. *Bumpus*, 362 Mass. 672, 681 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), reviewed on a petition for habeas corpus sub nom. *Bumpus* v. *Gunter*, 425 F. Supp. 1060 (D. Mass. 1978). Rather, the granting of a motion for a bifurcated trial rests within the sound discretion of the judge. See *Commonwealth* v. *O'Connor*, 7 Mass. App. Ct. 314, 319 (1979), citing *Commonwealth* v. *Haas*, 373 Mass. 545, 562 (1977), *S.C.*, 398 Mass. 806 (1986). We find no abuse of discretion on the record of this case.

*Judgment affirmed.*