COMMONWEALTH vs. GERALD A. HUNT.

No. 92-P-698.

Suffolk. November 21, 1994. - March 24, 1995.

Present: DREBEN, KASS, & LAURENCE, JJ.

*Constitutional Law*, Confrontation of witnesses, Assistance of counsel. *Witness*, Unavailability. *Evidence*, Previous testimony of unavailable witness. *Practice, Criminal*, Assistance of counsel.

At a criminal trial, the Commonwealth demonstrated sufficient diligence in attempting to obtain the attendance at trial of a witness, who was a foreign national residing in England and who refused to return to attend the trial, to support the judge's finding that the witness was unavailable, with the result that the witness's recorded testimony at the probable cause hearing was admissible in evidence. [293-296]

There was no merit to the claim on appeal from a conviction of armed assault with intent to murder that the defendant's trial counsel had provided ineffective assistance of counsel. [296]

INDICTMENTS found and returned in the Superior Court Department on June 13, 1990.

The cases were tried before *Sandra L. Hamlin*, J.

*Robert J. Carnes* for the defendant.

*Lucy A. Manning*, Assistant District Attorney, for the Commonwealth.

KASS, J. Paul C. Edwards, a witness to the principal crime of which the defendant Hunt was found guilty, armed assault with intent to murder, had removed to England and was not available to testify.[1] Earlier, Edwards had testified and had been cross-examined at a probable cause hearing. His recorded testimony was read to the jury over the objection of the defendant. On appeal, the defendant argues that the

---

[1] The defendant was also convicted on a charge of carrying a dangerous weapon, a knife. G. L. c. 269, § 10(*b*). The sentence imposed for this offense runs concurrently with the longer sentence for the more serious crime.

Commonwealth made an insufficient showing of Edwards's unavailability. There are also assertions of ineffective assistance of counsel. We affirm.

Edwards is a resident of Manchester, England, and a citizen of Great Britain. He had been in the United States during the spring of 1990 as part of a lacrosse program and on April 8, 1990, several friends, including a lacrosse coach, Jeffrey Lynch, were showing him around Boston. There was evidence from which the jury could find that on April 8, 1990, at around 2 A.M., Edwards, Lynch, and three other men and three women who were in their party, had left a night spot, the "Avenue C," and were on their way, on foot, to the Chinatown section of Boston for a late night snack. As they approached a corner, they passed by a knot of people. In the account given by Edwards, a woman, who "seemed to be having a fight with someone . . . was walking back on her heels and backed into me. I automatically . . . turned around and apologized, she turned around and punched me straight in the mouth." Lynch, who had been on the other side of the street, came to intervene and pushed the attacking woman away. Immediately Lynch was set upon by a group of six to eight men, including the defendant Hunt.

Hunt was wearing a white jacket with tassels, distinctive dress that Lynch and members of his group particularly noticed. Four members of that group, Edwards, Ismael Hislop, and David Attalah saw the white jacketed man among those who set upon Lynch, and Lynch had noticed him among those with whom Edwards had become involved. Edwards and Attalah saw the defendant strike Lynch several times in Lynch's lower abdomen, although they saw no knife. Lynch fell to the ground after one of the defendant's blows. Hislop extricated Lynch from the melee. Lynch fled, stumbling somewhat. He had been gravely wounded by knife stabs and required extensive surgical treatment at Boston City Hospital, where he was rushed by ambulance.

While Lynch's friends were waiting for an ambulance, Hunt came to look the situation over. He said to Hislop, "Don't worry, homeboy, it's all right; it's just a white kid."

As Hislop approached him, Hunt reached for a black leather pouch on his person but did nothing more when someone else approached. After the assault on Lynch, Hunt asked a man called Shane to exchange coats with him. Shane said, "Why, man?" Hunt replied, "Because I just stabbed someone."

Police summoned to the scene went looking for Hunt. One of the officers knew him from an encounter earlier that night and recognized the white tasseled jacket description. When that officer and his partner approached Hunt, whom they found almost at once, Hunt dropped a folding knife that he had been holding behind his back. At the police station, to which the police had brought Hunt, Officer Charles Byrne, one of the arresting officers, noticed blood on Hunt's white jacket and on his matching white tasseled leather boots. He had not seen blood on Hunt at their earlier meeting that night. On analysis, the blood proved to be type A; Lynch's blood was type A.

1. *Availability of the witness Edwards.* Before trial, which began on February 22, 1991,[2] there was a hearing on the Commonwealth's motion to declare Edwards unavailable as a witness and to introduce a tape transcription of Edwards's testimony at a probable cause hearing. The motion was allowed and during presentation of its case, the prosecution played the tape for the jurors and provided the jurors with a written transcript of what was on the tape.

There is a base line preference under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights for face-to-face confrontations in criminal cases between accusatory witnesses and defendants. Among the established exceptions to the right of confrontation is that the prior recorded testimony of an unavailable witness may be received in evidence if: (1) the prior testimony is reliable; and 2) the government demonstrates that the witness is, indeed, unavailable. *Ohio* v. *Rob-*

[2]At varying times both parties moved to stay the appeal in this court, pending action on a motion for a new trial. A single justice vacated the stay, effective July 15, 1994, because of the failure of the trial judge to act on the motion for a new trial. Briefing was completed November, 1994.

*erts*, 448 U.S. 56, 65 (1980). *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 427-428 (1988). *Commonwealth* v. *Childs*, 413 Mass. 252, 260 (1992). Liacos, Massachusetts Evidence § 8.7.2 (6th ed. 1994). Reliability of the prior testimony turns on whether the defendant had an adequate opportunity to cross-examine at the time the prior testimony was recorded. *Commonwealth* v. *Bohannon*, 385 Mass. 733, 741 (1982). At the probable cause hearing, defense counsel (who was not the lawyer who later acted as trial counsel) was permitted to cross-examine Edwards without limitation and did so. On appeal, the defense concedes the reliability of the prior recorded testimony of Edwards but says that the Commonwealth did not carry its burden of showing that he was unavailable.

Edwards had stayed in the United States long enough to testify at the probable cause hearing and had then returned to England. In anticipation of a trial on December 3, 1990, the prosecution spoke by telephone with Edwards on November 19, 1990, to request his appearance. Edwards said he had no plans to return to the United States and expressed an "unwillingness to return . . . for any reason at all." The judge then assigned to the case allowed a motion declaring Edwards unavailable and his recorded probable cause testimony admissible in evidence. Trial did begin on December 3, 1990, but ended in a mistrial on December 6, 1990. Trial began again on February 22, 1991, before a different Superior Court judge. At the hearing on the motion to receive the testimony of Edwards, the assistant district attorney recounted her unsuccessful efforts the preceding November to have Edwards attend trial and added, "His situation has not changed . . . He still has no further plans or future plans to return to the United States."[3]

---

[3]The defendant suggests on appeal that the prosecution should have detained Edwards after the probable cause hearing and until trial. Apart from the impermissible invasion of personal liberty of a foreign national, the Commonwealth has no duty to commence its efforts to locate a witness until shortly before trial. *Commonwealth* v. *Childs*, 413 Mass. at 261. Liacos, Massachusetts Evidence § 8.7.2 (6th ed. 1994).

Although the quoted remarks of the prosecutor are a bit enigmatic as to what she did to renew her attempt to secure the attendance of Edwards when the second round of trial came up, the inference fairly to be made is that she asked and he said, "No." It would have been better had the judge, perhaps prodded by defense counsel, asked what had the prosecutor said to Edwards and when and what had he said? Had the Commonwealth offered him air fare and lodging? Measured against the authorities, however, the Commonwealth's activity in locating Edwards, finding him in a foreign country, and his refusal to come to the United States are a sufficient showing of diligence by the Commonwealth and unavailability of the witness. "One, in hindsight, may always think of other things." *Ohio* v. *Roberts*, 448 U.S. at 75. See generally, on the subject of unavailability of a witness or her testimony, *Commonwealth* v. *DiPietro*, 373 Mass. 369, 380-386 (1977).

Whether the Commonwealth carries its burden on the question of sufficient diligence in attempting to obtain the attendance of the desired witness depends upon what is a reasonable effort in light of the peculiar facts of the case. *Ohio* v. *Roberts*, 448 U.S. at 74-77. *Commonwealth* v. *Childs*, 413 Mass. at 260-261. Proposed Mass.R.Evid. § 804(a).

When a witness is outside of the borders of the United States and declines to honor a request to appear as a witness, the unavailability of that witness has been conceded because a State of the United States has no authority to compel a resident of a foreign country to attend a trial here. It cannot do it through its own process or "through established procedures depending on the voluntary assistance of another government." *Mancusi* v. *Stubbs*, 408 U.S. 204, 212 (1972). Compare 28 U.S.C. § 1783(a) (1988), which permits a court of the United States to subpoena a national or resident of the United States who is temporarily out of the country; G. L. c. 233, § 13B, which provides for cooperation among States to secure the attendance of a witness who has relocated to a different State. That a prospective witness is a foreign national outside the United States does not excuse the govern-

ment from making diligent efforts to locate and secure the attendance of the witness. "[T]he possibility of a refusal is not the equivalent of asking and receiving a rebuff." *Barber* v. *Page*, 390 U.S. 719, 724-725 (1968). The trial judge did not err in declaring Edwards unavailable and allowing the tape of his probable cause testimony to be heard by the jury.

2. *Ineffective assistance of counsel.* In what has become an almost routine component of appellate briefs in criminal cases, new counsel on appeal asserts ineffective assistance of counsel — four instances in this case. Reading the transcript as a whole, Hunt had a reasonably competent defense. The combination of percipient witnesses, Hunt's own inculpatory statements and acts, the blood matching, and the knife made up a powerful bundle of evidence against Hunt. The claimed inadequacies of trial counsel are the second guessing of a lawyer who has the luxury of pondering the transcript after the battle is over. See *Strickland* v. *Washington*, 466 U.S. 668, 689 (1984); *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974); *Commonwealth* v. *McGann*, 20 Mass. App. Ct. 59, 61 (1985). It would add nothing to these annals to discuss the details. Certainly it has not been shown that counsel's performance resulted in a forfeiture of a substantial defense. *Commonwealth* v. *Haley*, 413 Mass. 770, 777 (1992). *Commonwealth* v. *Gill*, 37 Mass. App. Ct. 457, 465 (1994).

*Judgments affirmed.*