COMMONWEALTH vs. BRYAN FLOREK.

No. 98-P-552.

Norfolk. October 12, 1999. - January 6, 2000.

Present: PORADA, DREBEN, & BECK, JJ.

*Evidence,* Previous testimony of unavailable witness, Unavailable witness, Admissions and confessions, Voluntariness of statement, Identification. *Witness,* Unavailability. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement. *Identification.*

The record of a criminal trial did not demonstrate that the Commonwealth's identifying witness was "unavailable" so as to render admissible the prior recorded testimony of that witness, and a new trial was required. [415-417]

Prior recorded testimony of a witness at a hearing on a motion to suppress evidence was not shown to be unreliable. [417-418]

At the trial of indictments, the voluntariness of the defendant's statements to the police was not a live issue, and the judge's failure to give a "humane practice" instruction was not error [418-419]; however, the judge erred in failing to hold a hearing before ruling on the admissibility of the statements at the time the defendant raised an objection to their admission at trial [419].

An identification procedure in a criminal case was not demonstrated to have been unnecessarily suggestive so as to warrant the suppression of the identification of the defendant. [419-420]

INDICTMENTS found and returned in the Superior Court Department on September 25, 1996.

A motion to suppress evidence was heard by *Judith A. Cowin,* J., and the cases were tried before *Nonnie S. Burnes,* J.

*Frederic G. Bartmon* for the defendant.

*William T. Harrington,* Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was convicted by a jury in the Superior Court of armed robbery and attempted armed robbery of a Shell gas station in Dedham. He asserts that his convictions should be reversed because the judge erred in allowing the Commonwealth to introduce in evidence the prior recorded

testimony of a missing witness and the statements made by the defendant at the time of his initial questioning by the police and at his booking. The defendant also claims that the judge erred in denying his motion to suppress his identification by the sole identifying witness because of unnecessarily suggestive police procedures. We reverse.

1. *Prior recorded testimony of a missing witness.* Prior recorded testimony of a witness is admissible only if the party offering the testimony proves that the witness is "unavailable" to testify at the time of the trial and that the prior testimony is "reliable." *Commonwealth* v. *Bohannon,* 385 Mass. 733, 741 (1982). *Commonwealth* v. *Siegfriedt,* 402 Mass. 424, 427 (1988). See *Ohio* v. *Roberts,* 448 U.S. 56, 65-66 (1980). Here, the defendant contends that the Commonwealth failed to prove both the unavailability of the witness and the reliability of the testimony.

"Unavailability" is established by demonstrating that the party offering the testimony made a good faith effort to obtain the witness's presence at trial. *Commonwealth* v. *Siegfriedt,* 402 Mass. at 427. "The lengths to which [a party] must go to produce a witness . . . is a question of reasonableness." *Commonwealth* v. *Childs,* 413 Mass. 252, 260-261 (1992), quoting from *Ohio* v. *Roberts,* 448 U.S. at 74.

In this case, at a nonevidentiary hearing the judge determined that the Commonwealth had exercised a good faith effort to produce the witness, who was the sole identifying witness to the crimes charged and who was vital to the Commonwealth's case. According to the prosecutor's representations to the trial judge, those efforts consisted of the following: messages left on an answering machine at the last known address of the witness in the Commonwealth; repeated contact with the witness's mother, who initially informed the prosecutor's office that the witness had moved to a specified address in Kentucky with his girlfriend, furnished the name and address of the witness's girlfriend's sister in Kentucky, and eventually informed the prosecutor's office that she had not heard from her son and did not know where he was; a fruitless computer check for an out-of-State license for the witness; prosecution calls to the Dedham police, who told them that they could not find the witness; a summons (which was returned) and a letter (which was not) mailed to the Kentucky address for the witness furnished by the witness's mother; and a summons (which was returned) mailed

to the defendant at his girlfriend's sister's address in Kentucky.

We are not persuaded as matter of law that those efforts by the Commonwealth were sufficient to warrant the judge to conclude that the Commonwealth had made a good faith effort to produce the witness. Although the Commonwealth does not have to exhaust every lead to meet its burden, substantial diligence is required. *Commonwealth* v. *Ross*, 426 Mass. 555, 557-558 (1998). Here, though the witness's mother furnished an address for the witness in Kentucky as well as the name and address of his girlfriend's sister who might have known his whereabouts, little was done other than sending the above mentioned summonses and letter. The Commonwealth did not enlist the cooperation of the Kentucky police to find the witness, attempt to make telephone contact with the witness or his girlfriend's sister in Kentucky, or summons him under the Uniform Law to Secure the Attendance of Witnesses, G. L. c. 233, § 13A. This is not a case where the Commonwealth had reason to believe that further efforts to locate the witness in Kentucky would be unsuccessful. See *Commonwealth* v. *Childs*, 413 Mass. at 259, 262 (a further investigation of the witness's whereabouts in Florida or South Carolina was not warranted where the witness's father, who was living in Florida, told the prosecutor that his son was no longer in Florida but was incarcerated in a Pennsylvania prison and when the prosecutor checked with the Pennsylvania authorities he learned that the witness was not incarcerated there [see note 3, *infra*]); *Ohio* v. *Roberts*, 448 U.S. at 74-75 (witness was unavailable because, although prosecution had information that the witness had moved to California from Ohio, the witness's mother had told the prosecution that the witness was no longer in California but was traveling outside Ohio and that she did not know where her daughter could be reached). In reaching our conclusion that the Commonwealth has failed to demonstrate the unavailability of the witness, we are also persuaded by the fact that the Commonwealth's efforts to locate this witness fall far short of those expended in other cases where a material witness has been found to be "unavailable." Cf. *Commonwealth* v. *Salim*, 399 Mass. 227, 233-235 & nn.3-4 (1987)[1]; *Commonwealth* v. *Sieg-*

---

[1]A police officer's search for two material witnesses consisted of the following. For one witness, he contacted the witness's brother-in-law, a California attorney, who told him that the witness had been living in California but had moved to Texas a few months earlier. The brother-in-law referred the officer

*friedt,* 402 Mass. at 426 & nn.2-3, 427-428[2]; *Commonwealth* v. *Childs,* 413 Mass. at 255, 258-262.[3] But see *Commonwealth* v. *Burbank,* 27 Mass. App. Ct. 97, 109 & n.2 (1989).[4]

The defendant also contends that the prior recorded testimony of the witness at the suppression hearing was not reliable because the motive for cross-examination of the witness at the suppression hearing would have differed from the motive at trial. The defendant asserts that at the suppression hearing he elicited testimony from the witness based on the charge that the

---

to the witness's sister who confirmed that the witness was in the Dallas area. The officer communicated with a police liaison officer in Dallas, providing him with identifying information about the witness, his wife, and his school age child, but the Dallas police were unable to locate him. The officer also tried to locate him through the Division of Employment Security (DES) in Massachusetts.

For the other witness, the officer checked the records of the DES, death records, and voting records in Massachusetts. The officer also spoke to local businessmen, a girlfriend, and other people who might have had contact with the witness. He also checked with the local police, the postal service, the probation department, the Registry of Motor Vehicles, and the local Social Security office.

[2] A police officer testified that he visited the witness's last known address, spoke to the witness's former employer, checked with the post office, telephone company, Registry of Motor Vehicles, and two law enforcement data bases. The officer also spoke to the witness's brother, father, and stepmother, all of whom had no recent contact with the witness and did not know where he could be located.

[3] The Supreme Judicial Court stated it was a close question whether the witness was unavailable based on the Commonwealth's efforts to locate the witness. Those efforts consisted of a police officer's investigating three local addresses for the witness and contacting the post office, local police, the Registry of Motor Vehicles, the National Criminal Information Center, and a credit computer service for the witness's address. The credit check revealed two addresses, one in South Carolina and one in Fort Myers, Florida. Through local information, the prosecutor was able to locate the witness's father in Fort Myers. The witness's father informed the prosecutor that his son was not living in Florida but was incarcerated in a Pennsylvania prison. Further investigation revealed that the witness was not incarcerated there. See *supra* at 416.

[4] The Commonwealth tried to locate the witness, who had moved to Florida, through his parents. The efforts included contacting the witness's mother who disclosed that she had last heard from her son when he called her from Virginia and told her he was heading west. The witness's parents never heard from their son after that.

In upholding the trial judge's finding of unavailability, we found it significant that the trial judge had made the same ruling in a previous trial of the defendant after the judge had been informed of the Commonwealth's earlier efforts to locate the same witness.

perpetrator was masked, which he would not have pursued if he had known that the Commonwealth was going to file a nolle prosequi to so much of the indictments as charged the defendant with committing crimes while masked.

"Reliability" is determined in this case by whether the defendant had an adequate opportunity to cross-examine the witness at the suppression hearing so that the use of this testimony at trial is not fundamentally unfair. See *Commonwealth* v. *Childs*, 413 Mass. at 262. The defendant concedes that the sole issue at trial was the identification of the defendant as the perpetrator of the crimes. This was essentially the same issue at the suppression hearing during which the defendant sought to attack the witness's out-of-court identification and subsequent in-court identification based on suggestive police procedures. The defendant does not argue that he did not have an adequate opportunity to cross-examine the witness but that he would have forgone some of his cross-examination if he had known that the Commonwealth was going to drop the masked portion of the indictments and that the testimony elicited by that cross-examination was detrimental to him. The mere fact that a portion of the witness's testimony on cross-examination may have been detrimental to the defendant does not render such testimony unreliable. See *id.* at 264. Nor was its admission fundamentally unfair to the defendant where it was essentially cumulative of the witness's testimony on direct examination at the suppression hearing.

2. *The statements made by the defendant upon his initial questioning and at the booking.* The defendant contends that certain statements made by him to the police upon his detention and at his booking should not have been admitted because the judge failed to hold a hearing to determine if the defendant had waived his Miranda rights and if the statements were voluntary. The defendant also argues that the judge erred in failing to give a humane practice instruction.

During the direct examination of the lead police officer, the prosecutor asked the officer to relate the conversation that she had with the defendant at the time of his apprehension by the police. The defendant seasonably objected to the question stating that he had filed a motion to suppress those statements on the grounds that the defendant had not been given his Miranda warnings and that the statements were not voluntary. The defendant, however, never pressed the court, prior to trial, for a

hearing on the motion. The judge overruled the objection because she found that the defendant's motion was not timely. Mass.R.Crim.P. 13(c)(2), 378 Mass. 872 (1979). After this ruling, the defendant did not object to the officer's subsequent testimony relating to the statements made by the defendant at his booking. Neither did he request a humane practice instruction nor did he object to the omission of such an instruction by the judge.

From our review of the record, it does not appear that the voluntariness of those statements was a live issue at trial, and, thus, the judge's failure to give a humane practice instruction was not error. See *Commonwealth* v. *Benoit*, 410 Mass. 506, 511-513 (1991). We do not, however, reach the same conclusion with respect to the judge's failure to hold a hearing before ruling on the admissibility of those statements. Even though the motion to suppress the defendant's statements was untimely, the Commonwealth, upon seasonable objection, nevertheless, bore the burden to prove affirmatively, prior to the admission of those statements, that the statements were properly obtained and that the defendant waived his rights. See *Commonwealth* v. *Adams*, 389 Mass. 265, 269-270 (1983); *Commonwealth* v. *Woods*, 419 Mass. 366, 370 & n.7 (1995); *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511-512 (1989). The judge, therefore, should have stopped the trial when defense counsel raised an objection to the admissibility of those statements on the grounds alleged in his motion to suppress. See *id.* at 511. Because a new trial is ordered, the judge should hold a hearing to determine the admissibility of those statements if the defendant seeks to suppress the statements. See *Commonwealth* v. *Sheriff*, 425 Mass. 186, 199 (1997).

3. *Motion to suppress the identification.* The defendant argues that his motion to suppress the identification should have been allowed because the showup was unnecessarily suggestive. He bases this argument on the ground that the defendant was surrounded by police officers at the time of the showup and was asked to remove his shirt. The mere fact that the defendant was surrounded by police officers does not make the identification process unnecessarily suggestive. See *Commonwealth* v. *Moffett*, 383 Mass. 201, 211-212 (1981) (suspect was locked in police cruiser); *Commonwealth* v. *Libby*, 21 Mass. App. Ct. 650, 656 (1986) (suspect was forcibly detained against side of police cruiser). Nor was the identification process rendered un-

necessarily suggestive by the fact that the defendant was exhibited to the witness without a shirt where the witness testified that he would have identified the defendant as the assailant even if he was wearing a shirt. Cf. *Commonwealth* v. *Melvin*, 399 Mass. 201, 205-208 & n.10 (1987) (victim's identification of assailant from a photographic array in which the assailant was the only person whose arm was in a sling was not rendered unnecessarily suggestive where victim testified that in making the identification he did not focus on the sling but the individual); *Commonwealth* v. *Chotain*, 31 Mass. App. Ct. 336, 341-342 (1991) (one-on-one showup not unnecessarily suggestive even though suspect had a gash on his head in the same place that the victim had told the police he had struck his attacker).

The judgments are reversed, and the verdicts set aside. The case is remanded to the Superior Court for a new trial.

*So ordered.*