COMMONWEALTH *vs.* SANTO ALEJANDRO PEREZ.

No. 04-P-1033.

Suffolk. September 13, 2005. - December 7, 2005.

Present: GREENBERG, KANTROWITZ, & MILLS, JJ.

*Evidence,* Previous testimony of unavailable witness, Unavailable witness. *Witness,* Unavailability.

The Commonwealth's attempts to secure a witness's attendance at a criminal trial warranted the judge's finding that the Commonwealth had made a good faith effort to produce the witness, despite its failure to act on a capias that had issued for the witness, and the judge therefore correctly concluded that the witness was unavailable and that his prior recorded testimony was admissible. [263-265]

INDICTMENTS found and returned in the Superior Court Department on September 28, 2000.

The cases were tried before *Elizabeth B. Donovan,* J.

*Michael F. Lyons, Jr.,* for the defendant.

*Seema Malik Brodie,* Assistant District Attorney (*Mark D. Zanini,* Assistant District Attorney, with her) for the Commonwealth.

MILLS, J. In this case we evaluate whether the trial judge erred in concluding that the Commonwealth had made a good faith effort to secure a witness's attendance at trial. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Commonwealth* v. *Childs,* 413 Mass. 252, 260-261 (1992), quoting from *Ohio* v. *Roberts,* 448 U.S. 56, 74 (1980). The judge here determined that the witness was unavailable and that his testimony from a prior trial was, therefore, admissible. See *Commonwealth* v. *Roberio,* 440 Mass. 245, 247-248, 250 (2003); *Commonwealth* v. *Sena,* 441 Mass. 822, 832-833 (2004). We affirm.

1. *Background.* The defendant was tried on three separate oc-

casions on criminal indictments for armed robbery, G. L. c. 265, § 17; home invasion, G. L. c. 265, § 18C; and kidnapping (five counts), G. L. c. 265, § 26, crimes that were alleged to have occurred on July 25, 2000. After two mistrials,[1] the third jury trial commenced on October 9, 2003, and resulted in convictions on all charges. At issue is whether the admission at the third trial of prior recorded testimony of a key Commonwealth witness, codefendant Kenny Troncoso, who had testified at the two previous trials pursuant to the terms of a cooperation agreement, constitutes reversible error.

While the judge made no specific findings, the Commonwealth and the defendant appear essentially to agree that the Commonwealth took the following actions.[2] In August of 2003, between the defendant's second and third trials, Troncoso pleaded guilty pursuant to a cooperation agreement with the Commonwealth and was sentenced to incarceration, but had already served his committed sentence when he entered his guilty plea. He was also sentenced to probation with certain special conditions, including that he (1) continue to abide by and satisfy the obligations of his agreement with the Suffolk County district attorney's office; (2) testify at any hearing or trial related to the July 25, 2000, incident; and (3) testify completely and truthfully at any hearing or trial related to that incident.

---

[1]The first trial resulted in a mistrial because of problems with an interpreter. The second trial resulted in the defendant's conviction of unlawful possession of ammunition, in violation of G. L. c. 269, § 10(*h*), but the jury were deadlocked on the remaining charges.

[2]At various times when the jury were not present, the judge asked questions of police officers and court personnel and received answers from them concerning their efforts to locate Troncoso. The judge also heard representations from the prosecutor as to his own personal efforts and actions, as well as actions and efforts of others that were reported to him about the search for Troncoso. While these personnel were not sworn, it appears in this case that the various answers and representations provided an adequate basis for the judge's ultimate ruling that Troncoso was unavailable and that his prior recorded testimony was consequently admissible. See, e.g., *Commonwealth* v. *Childs*, 413 Mass. at 254-257 & n.1 (parties treated certain recitations as findings). We reiterate that no objection has been made to the absence of formal findings or to the Commonwealth's recitation, with careful record citations, about the unavailing efforts to secure Troncoso's attendance at the third trial.

Within a few days of the scheduled commencement of the third trial, Troncoso was served with two subpoenas requiring his presence in court on Thursday, October 9, 2003. Both subpoenas were left at Troncoso's last known address. When the second subpoena was served, the prosecutor's investigator had a conversation with family members, who stated that Troncoso knew about the court date and would appear.

On Thursday, October 9, 2003, before opening statements, the prosecutor noted that Troncoso had been served with two subpoenas that had been left at his house earlier in the week and requested that a capias issue since the witness had not yet appeared in court. After opening statements, the prosecutor told the judge that Troncoso had not appeared, and the capias issued.

After the Commonwealth's first day of presenting evidence, the prosecutor stated that Troncoso would testify the following day if he appeared. The prosecutor informed the judge that detectives had had telephone contact with Troncoso. At the end of that court day, the prosecutor reported that Troncoso had not appeared.

On that same day, police detectives went to Troncoso's house and spoke with family members. Troncoso's brother reached Troncoso on the telephone and set up a three-way call between a detective, Troncoso, and himself. Troncoso stated that he would appear in court that afternoon, but he did not.

Later that day Detective Devane, the principal investigator in the case, went to an address in the South End section of Boston that had appeared on Troncoso's Nashua Street jail visitor list, but the detective discovered that the woman who had visited Troncoso in jail no longer lived at that address. Troncoso's brother had given the detectives another address where they might find Troncoso, and the detectives went there that day and spoke with a tenant who claimed she did not know Troncoso.

That evening one of the detectives went back to Troncoso's home and had a long conversation with his father to solicit the father's help in getting Troncoso to the courthouse. That detective also revisited other locations that had been identified in the course of the earlier efforts to locate Troncoso.

The next day, Friday, October 10, 2003, Troncoso voluntarily appeared at the courthouse at approximately 9:15 A.M. with his

brother. The prosecutor spoke briefly with Troncoso, who acknowledged that it was his obligation to testify. Detective Devane also spoke to Troncoso and confirmed that Troncoso said he understood that he had to testify. An hour later, when the prosecutor called Troncoso to testify, the prosecutor discovered that Troncoso had left the courthouse.

The prosecutor then told the judge that he would offer Troncoso's prior recorded testimony in evidence in view of the difficulty in procuring his presence at trial. He informed the judge of the terms of the cooperation agreement and advised that the Commonwealth would continue its efforts to locate Troncoso throughout the three-day weekend.

Before recessing on Friday, the judge learned that Troncoso had been present in the courthouse that morning, and the judge inquired about the capias. The clerk noted that Troncoso had voluntarily appeared and had not been brought into court to be recognized; the clerk further reported that Troncoso had not been taken into custody.

That same day, the detectives made repeat visits to Troncoso's home and at least one other address where they had originally looked, but had had no success. Troncoso's brother made some telephone calls in an effort to locate Troncoso, but the calls were unavailing. That night, and on Sunday, October 12, 2003, detectives continued their efforts by making telephone calls and driving around looking for Troncoso. On Monday, October 13, 2003, a detective returned to Troncoso's home and talked with his father at length in an effort to get Troncoso into court the next morning.

On Tuesday, October 14, 2003, the prosecutor informed the judge that these efforts were unsuccessful and that he wished to offer Troncoso's prior recorded testimony from the defendant's second trial. The defendant's attorney objected, asserting that it had not been made to appear that Troncoso was unavailable.

After further discussions between the judge and counsel, including the prosecutor's admission that, in retrospect, it had been a mistake not to take Troncoso into custody, the judge suggested that the prosecutor contact Troncoso's attorney. After the judge had been informed of police inquiries to the probation department, she heard from the probation officer with details of

Troncoso's scheduled appearances with probation and his recent failure to appear. The judge instructed the probation officer to take the next hour to see if he could contact Troncoso, and the officer reported back that he had had no success. The probation officer also stated that he had spoken with a Boston police officer who had indicated that the police department was also looking for Troncoso. The prosecutor reported to the judge the unsuccessful efforts by Troncoso's attorney to reach Troncoso.

A police detective made further contact with Troncoso's brother to obtain information from Troncoso's sister, as well as to continue efforts to locate the witness. Troncoso's brother was taken to the courthouse and was questioned by the judge. The judge also instructed the prosecutor to call Troncoso's sister in an attempt to find additional telephone numbers where Troncoso might be reached. After a recess, the judge spoke again to Troncoso's brother, who stated that neither he nor his sister had any idea where Troncoso was and that he had not been home for the past two weeks. The prosecutor also notified the judge that Troncoso had expressed to his brother that he did not wish to testify. The judge granted the Commonwealth's request for one further continuance until the morning of October 15, 2003, for a final effort to locate Troncoso. At that point the judge ruled that the Commonwealth had made a good faith effort to bring Troncoso into court and that the prior recorded testimony could be used on the following morning if Troncoso did not appear.

Troncoso did not appear the next morning. His recorded testimony from the second trial was admitted, and the judge instructed the jury that the procedure was being used because Troncoso was unavailable to testify at this trial and that they should consider the evidence as if Troncoso were present.

2. *Discussion.* Before allowing the Commonwealth to introduce the prior recorded testimony of a missing witness, the judge must be satisfied that the Commonwealth has made a good faith effort to locate and produce the witness at trial. *Commonwealth* v. *Roberio,* 440 Mass. at 248. "Whether the Commonwealth carries its burden on the question of sufficient diligence in attempting to obtain the attendance of the desired witness depends upon what is a reasonable effort in light of the

peculiar facts of the case." *Commonwealth* v. *Sena*, 441 Mass. at 832, quoting from *Commonwealth* v. *Hunt*, 38 Mass. App. Ct. 291, 295 (1995).

The distinguishing feature of this case is the existence of an unsatisfied capias. A capias had issued; Troncoso then voluntarily appeared; there was no further action on the capias, and Troncoso departed again, apparently with no knowledge that the capias was outstanding. The defendant argues that the Commonwealth was unreasonable in its apparent lack of attention to the capias and that, accordingly, the Commonwealth did not meet its burden of demonstrating its good faith efforts to produce Troncoso for trial.[3]

We have examined cases in which the Commonwealth's efforts were insufficient to warrant the judge's conclusion that the Commonwealth had made a good faith effort to produce the witness, see *Commonwealth* v. *Florek*, 48 Mass. App. Ct. 414, 416 (2000); cases where the unavailability was quite apparent, see *Commonwealth* v. *Hunt*, 38 Mass. App. Ct. at 295; and cases where the Commonwealth's efforts were held to have been sufficient, see *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 427-428 (1988); *Commonwealth* v. *Childs*, 413 Mass. at 260-261; *Commonwealth* v. *Roberio*, 440 Mass. at 247-250; *Commonwealth* v. *Sena*, 441 Mass. at 832-834; *Commonwealth* v. *Burbank*, 27 Mass. App. Ct. 97, 109 (1989). All of the cases are dependent on the facts presented. Here we have detailed the efforts made to locate Troncoso when it was time for him to testify. In light of these efforts, we are not persuaded that the judge erred by finding Troncoso unavailable for the third trial and consequently allowing his prior recorded testimony in evidence.[4]

We also comment that the assistant district attorney took an

---

[3]The defendant does not contend that the prior recorded testimony would be inadmissible for any reason other than the Commonwealth's purported failure to demonstrate Troncoso's unavailability.

[4]The defendant also argues that it was prejudicial error to retain one reference to Troncoso's obligation to testify truthfully in the cooperation agreement that was introduced in evidence on redirect examination at the second trial; four other such references were redacted from the agreement. The defendant has not provided us with any authority for the proposition that one such reference is not allowable, and we find the argument to be without merit.

unnecessary risk by ignoring the outstanding capias, which is, after all, a court order. "One, in hindsight, may always think of other things." *Commonwealth* v. *Hunt, supra* at 295, quoting from *Ohio* v. *Roberts*, 448 U.S. 56, 75 (1980). The failure to act on the capias was regrettable and unwise, but clearly there is no evidence of any lack of a good faith effort to secure Troncoso's attendance, considering the circumstances at the time. The judge did not commit error in allowing Troncoso's prior recorded testimony in evidence.

*Judgments affirmed.*