## Commonwealth *vs.* Robert Robinson.

No. 06-P-982.

Bristol. March 6, 2007. - July 19, 2007.

Present: Cohen, Mills, & Katzmann, JJ.

Further appellate review granted, 449 Mass. 1109 (2007).

*Robbery. Assault and Battery. Evidence,* Hearsay, Previous testimony of unavailable witness, Unavailable witness. *Practice, Criminal,* Hearsay, Witness. *Witness,* Unavailability.

A Superior Court judge committed reversible error in admitting in evidence at a criminal trial the prior recorded testimony of a missing witness from the defendant's probable cause hearing, where the Commonwealth made an insufficient showing of a good faith effort to locate the witness. [579-582]

Indictments found and returned in the Superior Court Department on September 29, 2004.

The cases were tried before *E. Susan Garsh*, J.

*Elizabeth Doherty* for the defendant.

*Tara L. Blackman*, Assistant District Attorney, for the Commonwealth.

Mills, J. The defendant, Robert Robinson, was convicted by a Superior Court jury of unarmed robbery, G. L. c. 265, § 19(*b*), and assault and battery, G. L. c. 265, § 13A, occurring in New Bedford on April 11, 2004. On appeal he claims error (1) in the admission of the victim's prior recorded testimony; (2) in the admission of other hearsay testimony; and (3) by ineffective assistance of counsel for failure to preserve constitutional error. We reverse the convictions because the prior recorded testimony should not have been admitted.

1. *Background.* On April 11, 2004, the victim, Mario Perez, was beaten and robbed outside of a bar in New Bedford where he had been drinking and had become intoxicated. His brother,

Francisco Perez, was with Mario[1] for some of the evening, prior to the assault and then shortly thereafter. Francisco also had been drinking. The evidence of the incident, and the defendant's arrest, need only be summarized. Mario was beaten and mugged by two men at about midnight. Mario's wallet and two necklaces were taken. Francisco heard what was happening to his brother and ran to help. He observed Mario lying on the ground, and Francisco, Mario, and a few of their friends then chased the two muggers as they ran away.

The muggers ran to a multi-family dwelling, went inside, and locked the door behind them. Mario and Francisco stayed outside the house until the police arrived. The police, after brief activity irrelevant to this discussion, proceeded to a third-floor landing where they found the defendant and one Angel Marcial crouching against a wall.[2] The defendant and Marcial were arrested, and a search revealed that Marcial had Mario's wallet in his pocket. When the police led the defendant and Marcial outside, Mario and Francisco recognized them as the two men who had beaten Mario. Mario ran up to one of the officers, pointed to the defendant and Marcial and stated, "That's the two guys." Mario did this without being asked anything by any police officer.

2. *The victim's unavailability for trial.* The mugging took place on April 11, 2004. Mario testified at a probable cause hearing on July 6, 2004, and, at that time, lived on Washburn Street in New Bedford. The defendant was arraigned on October 12, 2004. On June 8, 2005, twelve days prior to trial, the Commonwealth filed a motion in limine seeking to introduce Mario's testimony from the probable cause hearing, asserting his unavailability, and claiming the prior recorded testimony exception to the general hearsay prohibition. In support of its motion, the Commonwealth submitted factual assertions, legal authorities, an affidavit of State police Trooper Curtis West, and two affidavits of an assistant district attorney (ADA). Upon review of the submissions and hearing representations of counsel, the

---

[1]We refer to the Perezes by their first names to avoid confusion.

[2]Part of the defense was the testimony of Marcial (then serving a three-year sentence on a plea to the same charges) to the effect that the defendant accidentally encountered Marcial after he, alone, had assaulted Mario and taken his wallet. Marcial testified, essentially, that the defendant was unknown to him and just happened to follow him into the apartment building.

judge ruled that the Commonwealth had satisfied its burden to show Mario's unavailability, essentially finding that the following efforts by the Commonwealth constituted a good faith and diligent search for him. We summarize the Commonwealth's efforts, accepting all factual assertions as true.

In early 2005, the Commonwealth requested assistance from the Massachusetts State police in locating Mario for purposes of testifying at the trial.[3] Trooper West obtained a photograph of Mario from the New Bedford police department and went to Mario's last known address (Washburn Street) on several occasions. Trooper West researched the registration of a sport utility vehicle with Rhode Island license plates, which he had noticed outside of the Washburn Street address "on more than one occasion." The vehicle was registered to Francisco, with an address on Weldon Street in Providence, Rhode Island. Trooper West went to the Weldon Street address "several times," knocking on the door and obtaining no response. During one such attempt he could hear music playing inside the residence, but no one responded to the knock. Displaying Mario's photograph, he spoke with neighbors and a representative of the property's management company, but no one could recall having seen Mario at the Weldon Street address.[4] Trooper West learned, at some point, that Mario had two outstanding arrest warrants issued from the New Bedford Division of the District Court Department, both of which were outstanding as of June 7, 2005, the date of Trooper West's affidavit.

As Trooper West was searching for Mario, the Commonwealth mailed summonses and letters to Mario at the Washburn Street address, but those communications were returned with the message of "not known at this address."[5] The Commonwealth eventually located Francisco by tracking a case pending against him,

---

[3]No more precise date was given. Furthermore, unless we specify to the contrary, no dates were provided to the judge for any of the Commonwealth's activities that were asserted to show a good faith and diligent search for Mario. Also, no precise number of visits by Trooper West to the New Bedford and Providence residences were provided to the judge.

[4]Apparently, no effort was made to determine from the neighbors if Francisco was a resident at, or otherwise frequented, the Weldon Street property.

[5]The supplied affidavits did not specify the dates or number of summonses and letters mailed to Mario, the date of the tracking of Francisco's District

also in the New Bedford Division of the District Court Department. On the Wednesday before the defendant's trial, the Commonwealth succeeded in serving Francisco in hand with a summons when he appeared in court on his own case.

Francisco complied with the summons and appeared at the Bristol Superior Court in New Bedford on the morning of June 20, 2005, the defendant's scheduled trial date. It was not until that morning that the Commonwealth spoke with Francisco about the whereabouts of his brother, Mario. Francisco then explained that Mario had moved to New Jersey, but Francisco said he did not know where, and further stated that Mario telephones him occasionally from New Jersey, but that Mario does not have his own telephone number and uses a friend's telephone to call.

After hearing from the parties, and reviewing the Commonwealth's submissions, the judge found that "the Commonwealth has met its burden of demonstrating a good faith and diligent effort to locate the complaining witness, Mario Perez," and ruled that Mario's probable cause hearing testimony was admissible at the defendant's trial.

3. *Discussion.* Our review of a judge's decision to admit prior recorded testimony based on the unavailability[6] of a witness is instructed by the standard set forth in *Commonwealth* v. *Roberio*, 440 Mass. 245, 249, 250 (2003). See *Commonwealth* v. *Bohannon*, 385 Mass. 733, 740-747 (1982). Before the Commonwealth is allowed to introduce prior recorded testimony of a missing witness, the Commonwealth must demonstrate a good faith effort to locate and produce the witness at trial. *Commonwealth* v. *Perez*, 65 Mass. App. Ct. 259, 263 (2005). When former testimony is sought to be offered against a criminal defendant, the degree of good faith and due diligence required is greater than in other situations. *Commonwealth* v. *Bohannon*, *supra* at 745, citing McCormick, Evidence § 253, at 613 (2d ed. 1972). As indicated in *Bohannon*, *supra*, citing *Newton* v. *State*, 403 P.2d 913 (Okla. Crim. App. 1965), due diligence

Court record, nor the date that the record became known to him.

[6]The defendant does not contend that the prior recorded testimony would be inadmissible for any reason other than the Commonwealth's failure to demonstrate Mario's unavailability. See *Commonwealth* v. *Perez*, 65 Mass. App. Ct. 259, 264 n.3 (2005).

implies more than partial notice and last minute activities. "The lengths to which [a party] must go to produce a witness . . . is a question of reasonableness." *Commonwealth* v. *Florek*, 48 Mass. App. Ct. 414, 415 (2000), quoting from *Commonwealth* v. *Childs*, 413 Mass. 252, 260-261 (1992). "Although the Commonwealth does not have to exhaust every lead to meet its burden, substantial diligence is required." *Commonwealth* v. *Florek*, *supra* at 416. The fact that the witness is in another State, or for that matter, in another country, standing alone, is not sufficient to show unavailability. *Commonwealth* v. *Ross*, 426 Mass. 555, 558 (1998).

There is no list of specific efforts that the Commonwealth must make to secure the presence of a missing or recalcitrant witness so as to satisfy the unavailability prerequisite to the admission in evidence of the witness's prior recorded testimony. Compare *Commonwealth* v. *Perez*, *supra* at 263-264 (cases are fact-dependant). In this case it was incumbent upon the Commonwealth to satisfy the judge that the Commonwealth had made a good faith effort to locate and produce Mario. See *id.* at 264. The judge here was satisfied; she ruled that Mario's testimony was admissible, and admitted it. We disagree and conclude that the Commonwealth's evidence was insufficient to support the judge's findings and ruling, and thus that the admission of the probable cause testimony was error.

While we accept as true all that is reported by Trooper West and the ADA, the judge was placed at a decided disadvantage by a lack of detail as to the dates of actions reported as having been taken. It is, therefore, impossible to evaluate the timeliness of those efforts. The trooper's activities begin in "early 2005." No dates were specified for the trooper's unnumbered ("several") visits to Mario's last known address on Washburn Street, and the same is true as to "several" visits to the address that was assumed to be Francisco's on Weldon Street in Providence. Similarly, while the ADA reports the mailing of summonses and letters (each in the plural) to Mario at the Washburn Street address, the dates of mailing and of notice back ("not known at this address") are unspecified.

Our reported decisions note various categories of actions that are relevant in the determination of the reasonableness of the

Commonwealth's efforts to find a missing witness. Included as potential avenues are searches of available public records from agencies, Federal, State, and local, with identity databases. The United States Postal Service, the Social Security Administration, the State Division of Employment Security, the State Registry of Motor Vehicles, State probation and court resources, municipal clerks, and voting officials are other examples. See generally *Commonwealth* v. *Siegfriedt,* 402 Mass. 424, 426 n.2 (1988); *Commonwealth* v. *Childs,* 413 Mass. at 255; *Commonwealth* v. *Florek, supra* at 415-416. Resources have included both Massachusetts and out-of-State resources and, while the Internet yet has not specifically been mentioned, the uses of telephones and answering machines have. The cases have placed emphasis upon communications with, and requests for assistance to, other law enforcement agencies both in and out of Massachusetts. See *Commonwealth* v. *Childs, supra* at 261; *Commonwealth* v. *Florek, supra* at 416. Influential in the cases is the inquiry about the missing· witness to his family, friends, neighbors, employers, and others who are assumed as probable sources of information. See *Commonwealth* v. *Salim,* 399 Mass. 227, 234 n.3 (1987); *Commonwealth* v. *Florek, supra* at 415.

In this case the Commonwealth failed to use many potential and significant sources of information. Particularly glaring, and we think controlling, is the Commonwealth's lack of attention to Mario's family, especially his brother Francisco, until the very eve of trial. The brothers were together at the time of the incident. As it turned out, Francisco was an important source of highly relevant information that could have assisted in a more timely and reasonable effort to locate Mario and assure his presence at trial. While the Commonwealth's submissions indicate a single late victory in finally serving Francisco in hand with a summons when he appeared in the District Court on his own case, the date of that service is missing, as is the date of the record examination that resulted in the information that there was, indeed, a case pending against Francisco. There is no explanation why there were no earlier efforts to inquire of Francisco; if that had been done, valid search activity would have included law enforcement and other data sources in New Jersey. However, Francisco was ignored for far too long, un-

fairly burdening the judge with the difficult task of balancing her trial management responsibilities[7] against the constitutional issue of a live witness for purposes of cross-examination. The Commonwealth made an insufficient showing of a good faith effort to locate Mario and, accordingly, Mario's unavailability was not established.

The judgments are reversed, the verdicts set aside, and the matter is remanded for a new trial.[8]

*So ordered.*

---

[7]We respect the often impossible burden of a judge to balance session lists with attorneys' schedules, and the perennial problems of juror and witness availability in the trial sessions.

[8]Whether there should be a new trial has not been raised or briefed by the parties, but we are instructed by *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 45 (1992), citing *Lockhart* v. *Nelson*, 488 U.S. 33, 34 (1988), "that, even if there would be insufficient properly admitted evidence to justify a conviction [which we need not decide in this case] after improperly admitted evidence is excluded from consideration, the double jeopardy clause would not bar retrial of the defendant" where, as here, "the Commonwealth has shown a reasonable prospect of filling the gap in its proof," *Commonwealth* v. *Campbell*, 60 Mass. App. Ct. 215, 224 (2003).